(78 South. 794)

HERTZ v. ADVERTISER CO. (3 Div. 330.)

(Supreme Court of Alabama. April 18, 1918.)

1. NEGLIGENCE ⬳47 — CONSTRUCTION OF BUILDINGS — STAIRWAYS — "TRAP" — "PITFALL."

Where a building was situated on sloping land so that ground floor of building was somewhat lower than vestibule of rear entrance on level with adjacent street, the construction and maintenance of a stairway from vestibule to ground floor, so that door from vestibule, through which public was invited to pass, opened into stairway, was not a "trap" or "pitfall."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Trap.]

2. NEGLIGENCE ⬳44—BUILDING—STAIRWAYS —DEFECTIVE LIGHTING.

Where door from vestibule into an office opens into stairway descending into office, the floor of which was lower than that of vestibule, the occupant of the building, having invited public to enter building through vestibule, was negligent in not keeping vestibule and stairway properly lighted.

3. NEGLIGENCE ⬳67 — BUILDINGS — STAIRWAYS — DEFECTIVE LIGHTING — CONTRIBUTORY NEGLIGENCE.

Where a building was situated on sloping land so that vestibule of rear entrance was somewhat higher than ground floor, a person falling down stairway from vestibule to office on ground floor was contributorily negligent, where with building poorly lighted she opened door and stepped forward without ascertaining if door opened into stairway.

4. NEGLIGENCE ⬳125 — STAIRWAY — DEFECTIVE LIGHTING—EVIDENCE—SIMILAR ACCIDENTS.

Where the only theory on which plaintiff could recover damages for injuries sustained in falling down a stairway was that stairway was improperly lighted, evidence that others had fallen down same stairway, without showing that stairway was poorly lighted at the time such persons fell, is inadmissible, tending to show no negligence.

Appeal from Circuit Court, Montgomery County; Leon McCord, Judge.

Action by Mrs. S. Hertz against the Advertiser Company. Judgment for defendant, and plaintiff appeals. Affirmed.

The case made by the record is thus stated by counsel for appellant:

"Appellant sued appellee for damages occasioned by a fall she received while upon the premises of appellee by invitation; the fall being due to the alleged negligence of defendant in failure to use proper care and diligence to keep the building reasonably safe for plaintiff. The defendant pleaded not guilty and contributory negligence.

"The evidence offered by plaintiff tended to prove that plaintiff had business to transact with defendant, and for that purpose (and after an express invitation over the phone) went to defendant's premises on the night of March 8, 1916. That she entered these premises from the Lawrence street entrance, through which the public was invited and accustomed to go.- That upon leaving the public street she entered defendant's vestibule that was on grade or level with the street. A door from this vestibule opened into the office. As the door was opened there was a flight of steps leading abruptly down into the office. It was dark in this place, and as plaintiff opened the door (the door opening to the inside of the office away from the vestibule and over the steps) she fell down the steps and received most serious injuries. This condition of the premises was to plaintiff unknown until after her fall. During the trial of the case plaintiff, after proving the condition of the premises to have been the same, undertook to prove by the witnesses Jones and Leak that they each fell at the place plaintiff fell, and about the same time plaintiff fell. The trial court refused to permit the introduction of this evidence to which plaintiff duly excepted. R. pp. 12–14. After the evidence was closed, at the request of defendant in writing the court gave 16 charges. To the giving of each plaintiff excepted. R. pp. 18–22, 25–27."

Brief of appellee states the case as follows:

"The complaint claims $25,000 damages for personal injuries received by plaintiff while on defendant's premises, the complaint alleging in various terms that defendant was negligent in respect to maintaining its premises in a reasonably safe condition, and that plaintiff while on said premises by invitation received personal injuries as a proximate consequence of such negligence. The defenses were the general issue and contributory negligence.

"The advertiser company is a corporation engaged in the business of publishing a newspaper in the city of Montgomery; its place of business is on the southeast corner of Dexter avenue and Lawrence street. The building fronts on Dexter avenue and runs back about 110 feet on Lawrence street. There is a decided slope on Lawrence street, the rear of the build-

ing being about 2½ feet higher than the front. The business offices of the defendant are on the first floor of the building; the printing presses are in the cellar: the editorial rooms and working rooms are on the second and third floors. On the first floor the offices of the various officers and employés are partitioned off by fixtures similar to banking fixtures, with mahogany bases and glass panels.

"There is a wide entrance to the business offices of the defendant on the corner of Dexter avenue and Lawrence street, having a vestibule and a double door. On the Lawrence street side, to the rear of the building, there is an outer entrance leading into a vestibule 8 or 10 feet wide and 4 or 5 feet deep. To the right of this vestibule a flight of steps leads to the second floor, and to the left of the stairway, after passing through the vestibule, there is an entrance leading down to the business offices on the first floor. It is 16 inches from the level of the floor in the vestibule to the level of the floor in the rear of the business offices on the first floor of the building, and there are two ordinary steps from the vestibule down to this floor. At the head of the short flight of steps is a door opening from the vestibule in towards the rear of the offices. These business offices of the defendant are lighted with a series of 500 watt Mazda or Tungsten electric lamps, suspended from beams in the ceiling, and there is a drop-light in the vestibule. Defendant's witnesses testified that on the night of the accident to Mrs. Hertz all of these lights were burning. Plaintiff's witnesses testified, however, that it was dark in the vestibule and in the space to the rear of the offices on the first floor into which the door from the vestibule opened. Rec. pp. 14–18.

"The door opening from the vestibule into the rear of the business offices was put there in order that the employés might go from the first floor up to the operating departments on the second and third floors without going out on the street. Rec. p. 14. This door was used by the employés, and left unlocked for most of the time. There was no sign over the Lawrence street entrance that it was for employés only, and there was testimony that the public had been accustomed to use this entrance, although defendant's testimony was to the effect that it was designed primarily for and used mainly by its employés.

"At about 8 o'clock on the night of March 8, 1916, plaintiff, in company with another lady and her daughter, went with Mr. Wolff, in the latter's automobile, from the apartment house where the plaintiff lived, down town, intending to go to a picture show. Mr. Wolff stopped his automobile at the sidewalk on Lawrence street, near the Lawrence street entrance to the defendant's building, which was directly across the street from the Lawrence street entrance, to the post office. Plaintiff wished to go into defendant's offices in order to see about answers to an advertisement which she had inserted in the Advertiser. Plaintiff had been in the defendant's offices on the first floor of the building several times before, always going through the wide entrance facing Dexter avenue. She had also been to the second floor of the building on two occasions, passing through the vestibule and ascending the flight of stairs to the right of the vestibule, but she had never been through the door leading from the vestibule down into the rear of the offices.

"Mr. Wolff got out of the automobile and went across the street to the post office. Mrs. Hertz also got out of the car, entered the vestibule above described, went on to the door leading down into the offices, took hold of the doorknob, 'and as soon as she started in she fell. She fell in a heap, and her ankles turned under her. It was dark in where she fell. Her feet crumpled up under her. She remembered she just opened the door and fell in a heap on

the floor, and her feet were caught under her body. * * * She did not know any steps were there. She had never noticed any steps in there. Rec. p. 10. * * * That she supposed that her idea was that the floor that she was on was the same level as the floor on the other side.' Rec. p. 11. As the result of her fall, the plaintiff received severe injuries.

"The case was submitted to the jury, which returned a verdict in favor of the defendant, and judgment was entered accordingly."

The negligence alleged and relied upon for a recovery was the construction of, and maintenance of, dangerous premises. Some counts alleged this negligence in very general terms; others were special. The defenses were the general issue and contributory negligence, which were pleaded in short by consent.

Hill, Hill, Whiting & Stern, of Montgomery, for appellant. Rushton, Williams & Crenshaw and Steiner, Crum &, Weil, all of Montgomery, for appellee.

MAYFIELD, J. It has been often said by this court that there is a general rule of society crystallized into law, which imposes a duty on the owner or controller of premises on which the public is expressly or impliedly invited to enter, that it shall be so constructed and kept as to be free from traps and pitfalls, and that the owner or controller must respond in damages for all injuries suffered by the public in consequence of a breach of this duty. The proposition was thus formulated by Stone, C. J., which has been repeatedly followed by this and other courts:

"There is a common duty resting on all persons, artificial as well as natural, who own real estate on which the public is expressly or impliedly invited to enter, that it shall be kept free from traps and pitfalls; and, if this duty be neglected, and injury results therefrom to any person, the person suffering by such trap or pitfall may recover damages for the injury. This is a general rule of society, crystallized into law. It partakes of the nature of a public nuisance done or suffered, which inflicts special injury on an individual. To a suit 'for such injury it is no defense that the injury was not intended. Human conduct must be tested by its known general or ordinary consequences." Montgomery & Eufaula Ry. Co. v. Thompson, 77 Ala. 456, 54 Am. Rep. 72.

This rule, however, does not apply to places strictly private, nor to places to which the public are not expected or expressly or impliedly invited to go. The rule also varies as to the liability of owners and proprietors as for constructing and maintaining such premises, and as to the duty the landlord owes to the tenant as to such dangerous premises; but these exceptions and limitations are not important in this case.

[1] We agree with the trial court in this case that the evidence fails to show that the defendant was guilty of culpable negligence in constructing a "trap" or "pitfall" on its premises, within the meaning of the above rule of law. If it was guilty of any negligence, it was as to the maintenance of safe

premises, as to those who were on its premises by express or implied invitation, in that it failed to properly light the entrance vestibule, and the entrance into its building at or near the place where the plaintiff fell. The rule of law under which this defendant is to be held 'liable to this plaintiff, if at all, is thus stated in Shearman & Redfield on the Law of Negligence:

"The occupant of land is bound to use ordinary care and diligence to keep the premises in a safe condition for the access of persons who come thereon by his invitation, express or implied, for the transaction of business, or for any other purpose beneficial to him; or, if his premises are in any respect dangerous, he must give such visitors sufficient warning of the danger to enable them, by the use of ordinary care, to avoid it. The extent, however, of his legal obligation is to use ordinary care and prudence to keep his premises in such condition that visitors may not be unnecessarily or unreasonably exposed to danger; and the mere fact that one is injured while on the premises is no evidence of negligence on the part of the proprietor." § 704.

This same rule of law has been announced in the following cases decided by this court:

"The principle is well·settled that if an occupier of premises, either directly or by implication, induces another to come upon them, he thereby assumes an obligation that such premises are in a reasonably safe condition, so that the person there by his invitation shall not be injured by them, or in their use for the purpose for which the invitation was extended." Campbell v. Lunsford, 83 Ala. 512, 3 South. 522; Railway Co. v. Thompson, 77 Ala. 457, 54 Am. Rep. 72; O'Brien v. Tatum, 84 Ala. 186, 4 South. 158; Sloss v. Knowles, 129 Ala. 410, 30 South. 584; Lake Shore Ry. Co. v. Rodemer, 139 Ill. 596, 29 N. E. 692, 32 Am. St. Rep. 218; Ala. Steel & Wire Co. v. Clements, 146 Ala. 266, 40 South. 971.

The case most in point which we have examined is that of Hoyt v. Woodbury, 200 Mass. 343, 86 N. E. 772, 22 L. R. A. (N. S.) 730, which supports our holding that there is ño negligence shown as to the construction of the premises. In that case the affirmative charge was directed for the defendant; there being no question as for failure to properly light. The language is so clear in the opinion, and the facts are so similar, that we quote in part what Justice Rugg said in that case:

"The ruling of the presiding judge, directing a verdict for the defendant, should be supported on the ground that there was no evidence of negligence on the part of the defendant. He owned a lot of land on a slight hillside, and it abutted upon a street which descended the hill. He had a right to improve his real estate in any reasonable way. He chose to maintain upon it a block with two stores separated by an entrance to upper stories. The problem which confronted him in doing this was so to arrange the means of access to these three entrances as to adapt them to the varying grade of the adjacent sidewalk. This could have been done in any one of several different ways. But it obviously must have been done in some way. So long as the present physical configuration of this commonwealth continues to exist, substantially the same difficulties will confront those who undertake to erect structures for the use of the public. Methods may change, and facilities of access may grow better, but the situation of the buildings abutting upon hilly streets will abide. Persons entering this building were charged with knowledge that they were not entering from a perfectly level sidewalk, and that generally the floors of buildings are not of precisely the same elevation as the sidewalk, even where it is level. Customers entering or leaving stores cannot be unmindful of these almost universally prevailing conditions."

Whether or not the vestibule or steps down which plaintiff fell were properly lighted on the occasion in question was disputed, and the question was submitted to the jury. The court nor the jury were not authorized to say or find that there was any negligence in the construction or maintenance of the building or premises, unless it was in the failure to have it properly lighted, on the evening of the accident. The evidence was without dispute that the building, including the part where the injury occurred, was properly equipped with ·electric lighting apparatus. The only dispute ·in the evidence was as to whether or not the lights were burning on the occasion of the accident. Plaintiff's evidence tends to show they were not, while defendant's shows that they were lighted. It was therefore open for the jury to find this question either way.

[2, 3] If this issue was found in favor of plaintiff, and that such failure proximately contributed to her injuries, and she herself was not guilty of any negligence which proximately contributed thereto, she would be entitled to recover. On the other hand, if the lights were burning, and the premises properly lighted, then there was no negligence whatever shown on the part of defendant, and,·of course, no liability; or, if the plaintiff was guilty of contributory negligence, then she could not recover, 'though the jury should find that the defendant was guilty of negligence as to the lights. We are of the opinion that the undisputed evidence showed plaintiff to have been guilty of negligence which proximately contributed to her injury, and that the general affirmative charge should have been given for the defendant.

If the premises were properly lighted, then, of course, there was no negligence, except her own; and if they were not properly lighted, she should have been more careful in going out of the vestibule into the main office building. She had no right to assume that the floor of the office building was on the same level as the floor of the vestibule. There. was a door between the two apartments, and this of itself was a warning to those entering, who were not acquainted, to ascertain whether the floor to the main building was on a level with the vestibule and the sidewalk, or whether it was reached by ascending or descending steps. She is shown not to have exercised the slightest degree of care to ascertain what was beyond the door which separated the vestibule from the floor of the main office. Her own evi-

dence shows that this door was shut, that she herself opened it, and stepped or walked right through as if the floors were on a level, and fell down the steps in consequence of her own negligence, in failing to ascertain whether or not there were steps or stairs connecting the two floors. We find a number of cases very similar, and in every instance under like conditions the plaintiff has been held to have been guilty of contributory negligence, and it seems to us there could be no doubt about the correctness of the decision. The Court of Appeals of New York in a very similar case said of like conditions:

"The presence of stairways leading either to higher or to lower stories must be expected in hallways, and we know of no reason or custom which justifies one entering a strange house in assuming that the hall will continue at the same level. This short flight of steps constituted no reasonable ' source of danger to any one who took proper precautions to see where he was stepping. It was in no way similar to a hatchway or elevator shaft, nor even to the usual steep flight of steps leading into a cellar." Brugher v. Buchtenkirch, 167 N. Y. 153, 156, 157, 60 N. E. 420, 421.

The courts of Massachusetts have frequently made similar rulings. A recent decision, after reviewing similar cases, thus summed up the doctrine:

"It is a matter of common observation that in entering and leaving stores, halls, railway car stations and platforms, office buildings, and other buildings and places, and private houses, adjoining surfaces are frequently at different levels, and the difference in level has to be overcome by one or more steps of greater or less height, or by some other device. The same thing happens in the interior of buildings and structures. We cannot think that such a construction is of itself defective or negligent. There is nothing in the nature of things which requires that the floor of a room, which is entered from a hall or corridor, especially in a building like the Tremont Temple Building, should be of the same level as that of the hall or corridor."

The English courts have held to the same doctrine; and so have many other American courts. The Iowa court holds to the same doctrine, and of a similar case it said:

"The fact that a door is there is a warning that it is the means of exit or of entrance from or to some other apartment, and a way up or down stairs, or to a baggageroom, or to a closet; and no one has the right to assume, without knowledge, or its equivalent, the character of the place to which it affords access." McNaughton v. Railway Co., 136 Iowa, 180, 113 N. W. 845.

In speaking of similar arrangements at a railway station, the English court said:

"There was nothing to show that the door and the steps beyond were more than ordinarily dangerous, and it was necessary and proper that something of the sort should be there for the convenient use of the station by the company. It would be difficult so to arrange every part of a station as to render it impossible for careless people to meet with injury." McNaughton v. Railway Co., 136 Iowa, 182, 113 N. W. 846.

It therefore follows that the trial court should have given the affirmative charge for the defendant. It is for this reason, unnec-essary to treat separately other assignments of error, insisted upon; if errors, they were necessarily without possible injury.

[4] The proffered evidence of plaintiff to show that others had fallen down the steps was properly disallowed. It was not shown that the conditions were the same; that is, as to lights or absence thereof, so as to render such evidence admissible for any purpose; it had no tendency to show negligence on the part of defendant, or due care on the part of plaintiff. Moreover, in this particular, if the conditions were the same, then it would necessarily appear that the persons who fell were also guilty of negligence.

We find no error, and the judgment of the trial court must be affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.