Argued December 6, 1934; reversed January 8, 1935

# DUNN *v.* FIRST NATIONAL BANK OF PORTLAND

(39 P. (2d) 944)

*Paul R. Harris,* of Portland (Davis & Harris and Harvey S. Benson, all of Portland, on the brief), for appellant.

*Nicholas Jaureguy,* of Portland (Cake & Cake and Jaureguy & Tooze, all of Portland, on the brief), for respondent.

BAILEY, J. Plaintiff brings this action for damages for personal injuries sustained by her on falling as she emerged from plaintiff's building through a revolving door. From judgment in favor of the defendant this appeal is prosecuted.

The complaint alleges that the defendant, a banking corporation, was located and maintained its principal place of business at the southwest corner of Fifth and Stark streets in Portland, Oregon; that the means of egress and ingress on Fifth street was by way of three separate and distinct sets of revolving doors; and that immediately adjacent to the "most northerly exit and revolving door, there is a perpendicular drop immediately to the east of said doorway and revolving door, so that the level of the walkway which persons use to said northerly exit and revolving door is on a higher level than the sidewalk immediately east and adjacent thereto".

On November 15, 1930, plaintiff entered defendant's place of business as a depositor and client of the defendant bank and on leaving the premises she passed through the northerly revolving door on Fifth street, and "through the carelessness and negligence of the defendant * *. * [was] precipitated upon said drop-off and received severe and permanent injuries". The negligence charged to the defendant consisted in (1) the carelessness and negligence of said defendant in failing "to maintain a walkway and means of egress to the said bank so that the clients would walk down a gradual incline instead of being compelled to pass over an abrupt and sudden drop-off maintained in the immediate proximity to the revolving doorway, which rendered said means of egress extremely dangerous and hazardous"; (2) defendant's failure to warn the plaintiff and its other patrons of the "existence and presence of said perpendicular drop-off"; and (3) "that said defendant at said time and place carelessly and negligently maintained an abrupt and sudden drop-off as aforesaid in connection with said exitway immediately adjacent to the revolving doorway, which

rendered said means of egress extremely dangerous and hazardous to clients using the same''.

After admitting that the plaintiff was on the bank's premises on business with the bank and that she was injured, the defendant in its answer alleged that the injuries sustained by plaintiff were the proximate result of her carelessness and negligence ''in failing to recall and observe that said entrance and sidewalk were wet with rain and that there was a slight perpendicular drop from said entrance-way to said sidewalk, of from two to three inches, and in failing to keep a proper or any lookout or to observe the condition of said entrance-way and sidewalk''. These allegations of contributory negligence were denied in plaintiff's reply.

The cause was submitted to the jury, which returned a verdict in favor of the defendant.

The evidence discloses that the sidewalk on Fifth street slopes down slightly to the north. Two of the three entrances on Fifth street are on a level with the sidewalk, while the third and most northerly entrance is from two and one-half to three inches above the sidewalk.

There was prepared and introduced as an exhibit in the case a plan of the last-mentioned entrance, with its revolving door, drawn to scale. According to this drawing the entrance is in form of a circle about six and one-half feet in diameter, and the door, consisting of four partitions or flanges fastened together at the center of the circle, divides the entrance space into four practically equal compartments. The partitions are curved, made on heavy metal framework, and constructed of panel glass to within twenty-four inches of the floor. They are equipped with rubber strips at the edges, which through the door's entire revolution contact the circular walls and provide resistance which pre-

vents the doors from moving except with the exertion of considerable force upon them. About waist-high across the glass of each partition is a bar which may be grasped by any one using the door.

Approximately one-fourth of the circumference of the circle within which the door revolves, or a segment on an arc of about five feet, opens upon the sidewalk, and the opposite quarter of the circumference opens into defendant's banking quarters. At the street opening there are brass grooves or tracks outlining the circular floor and forming part of the course of sliding doors which are put in place when the bank is closed.

The circular entrance in which the door revolves is floored with marble. Outside the entrance the space between the sliding door grooves and the sidewalk is laid with granite, which is approximately nine and one-half inches wide at the middle of the entrance and, as before stated, two and one-half to three inches higher than the sidewalk.

At the time of the accident the plaintiff was about fifty-two years of age and weighed one hundred eighty-five pounds. For about a year she had been a customer of the bank and had made a number of visits to it on business, although when entering or leaving the Fifth street side she had always, prior to the accident, as she remembered, used either of the southerly doors. On this particular call at the bank she was accompanied by her husband and on leaving used the most northerly door to suit his convenience.

She entered the door while it was moving, as she says, "fast", and she took hold of the horizontal bar across the glass in front of her. Her husband let one or two partitions pass and then stepped into one of the compartments. The door, he says, was then moving rapidly as though being pushed forcibly by some one who was entering the building.

The plaintiff did not observe the drop from the outside granite step to the sidewalk. As the door came to the outer opening there was a sudden jar, she says, and she stepped forward. In her own words, she "made the step and came down off of the step [the outer granite flooring]". In some manner she fell upon her hands and knees and rolled to her side.

On cross-examination she testified as follows:

"Q. And you think there was somebody going the other way?

"A. I think there was. There was a jar when I stepped through.

"Q. Was it that jar that knocked you down to the pavement?

"A. I think it was.

"Q. In other words, you were going through here, and a sudden jar, and that jar knocked you down to the pavement?

"A. Yes, sir. It was a step, I stepped through the door there, and the jar, and I came down over the step.

"Q. I see; the jar knocked you down, and when you came down you came over the step?

"A. The jar . . . I just jarred through and came down over the step.

"Q. Oh, you think that somebody on the other side made a jar, and that jar is what knocked you down, and then you fell over that step?

"A. I can't explain just exactly the way it was."

On redirect examination the following testimony was given:

"Q. Mrs. Dunn, just before luncheon, on an examination by the attorney for the defendant, you said something about you didn't know exactly how the accident happened, that the door was moving fast. Now, what did you mean by that?

"A. I meant when the door gave the jerk, that it was a jerk that threw me forward over the step and that is how I made the fall.

＊　　　＊　　　＊　　　＊　　　＊

"Q. Just how did that happen? As you came around, I understood you to say you went over the step.

"A. The door swung fast as I went through and it threw me forward, the jerk of the door threw me forward over the step.

"Q. Well, now, when you say the step you mean that . . .

"A. That little ledge."

Mr. Diamond, an architect, called as a witness for the defendant, described the construction of the door and testified that from the standpoint of correct architectural practice he considered the entrance to the northerly door properly arranged; that due to the small space between the brass grooves or guides and the sidewalk there was not enough room to construct a safe incline; that the slope there would drop about three inches in nine, which would make it hazardous; and that a proper incline would not drop more than two and one-half inches in a foot. He further testified that architects consider an incline safer than a step, especially "if you can get the right grade", and that in the city of Portland the usual practice is to build inclines rather than steps. This witness knew of no other instance in Portland, or elsewhere in this country, of construction conditions exactly similar to those of the entrance in question.

As to the range of visibility of the step to one emerging from the door, Mr. Diamond testified that the step could be seen through the glass part of the partitions for a distance of four feet, six inches, and that before reaching that point the view was obstructed by the base of the forward partition.

In referring to the operation of the revolving door this witness testified as follows:

"Q. And it takes some strength, too, to revolve it; it doesn't play around on its axis very easy?

"A. I would say that the friction there is caused by those rubber strips. The door revolves easy enough but those rubber strips on the edge of the door, they of course, meet the metal framework there and it naturally causes more or less friction.

"Q. It takes more or less strength to open that door, revolve it?

"A. Yes, it takes a push."

Plaintiff's assignments of error consist of exceptions taken by her to three instructions given by the court at the request of the defendant. These instructions will, for the purpose of convenience, be numbered herein as 1, 2 and 3, without any reference to the order in which they were given. They are as follows:

1. "It appears that the change in level from the street to the floor of the bank is in a perfectly obvious place to the view of all persons, and therefore, there was no duty on the part of defendant to warn the plaintiff and others regarding the existence of the step and you are to entirely disregard the allegations in the complaint, that the defendant was negligent because it failed to warn the plaintiff of the existence of this step."

2. "You are instructed that it is common practice in this city and state to have steps leading from the street level to the floor level of buildings and that it can not be considered negligence on the part of the defendant to have a step leading from the street level to the floor of this building, and you are instructed that there is no contention in this case that the use of revolving doors is negligence, or improper, and therefore, you are not to consider the defendant negligent, on the ground that defendant used a revolving door for the purpose of egress and ingress from and to its premises."

3. "You are instructed that in determining whether or not the defendant is liable in this case, you are not to consider the evidence regarding the weight of this door or the strength necessary to push it."

The defendant contends that these instructions were proper in the light of the facts in this case. Further, it argues that, irrespective of the correctness of the court's charge to the jury, the judgment entered was a proper determination of the case and under section 3 of article VII, Constitution of Oregon, should be affirmed for the following reasons: (1) that there was no evidence of defendant's negligence; (2) that plaintiff was guilty of contributory negligence; and (3) that the record discloses that the accident was due to an independent agency, to wit, the sudden jarring of the door by some one who was passing through it.

In support of its position that it was not negligent, the defendant cites and relies upon the following authorities: *Hoyt v. Woodbury,* 200 Mass. 343 (86 N. E. 772, 22 L. R. A. (N. S.) 730); *Hertz v. Advertiser Co.,* 201 Ala. 416 (78 So. 794, L. R. A. 1918F, 137); *Watkins v. Piggly Wiggly Bird Co.,* 31 Fed. (2d) 889; *Viles v. Thunborg,* 164 Wash. 190 (2 P. (2d) 666); and 45 C. J. 866.

The case of *Hoyt v. Woodbury,* supra, is referred to and followed in *Hertz v. Advertiser Co.,* supra, and in *Watkins v. Piggly Wiggly Bird Co.,* supra, which latter case also quotes with approval from the opinion in *Hertz v. Advertiser Co.,* supra. The opinion in *Viles v. Thunborg,* supra, quotes with approval from *Watkins v. Piggly Wiggly Bird Co.,* supra.

In *Hoyt v. Woodbury,* supra, the defendant's building was constructed on the side of a hill. Plaintiff in that case had entered the store of defendant's tenant and upon leaving his place of business "the plaintiff stumbled over this riser between the two levels of tiling as she was coming out of the store on a sunny afternoon". In referring to the matter the court said:

"Persons entering this building were charged with knowledge that they were not entering from a perfectly

level sidewalk, and that generally the floors of buildings are not of precisely the same elevation as the sidewalk, even where it is level. Customers entering or leaving stores can not be oblivious of these almost universally prevailing conditions. Owners of buildings have a right to proceed in their constructions in view of this common observation on the part of the public and assume in the actions of those who may frequent their buildings, the exercise of ordinary circumspection as to their footing. Steps of greater or less height are the usual, although not the only, means of overcoming such differences in level as existed in this case between the street and the entrance. People can not expect upon land obviously in private ownership next a street the same condition that they might anticipate in a public sidewalk. In arranging an approach to the store wider at the street line and converging toward the door and the approach to the upper floors at a conveniently higher level with a low step in ordinary form between, the defendant violated no duty which he owed to the plaintiff.''

The plaintiff in *Hertz v. Advertiser Co.*, supra, went in the evening to the defendant's place of business. She had been there a number of times previously and had on those occasions gone through the main entrance. On the evening of the accident she entered through a door which defendant contended was for its employes. In the vestibule where she found herself there were two doors, one leading upstairs and another, adjoining, leading to the company's office sixteen inches below the vestibule and reached by two steps. Plaintiff, on opening the latter door, fell to the office floor, and charged that the accident was due to the fact that the office was not properly lighted. The court said:

''She had no right to assume that the floor of the office building was on the same level as the floor of the vestibule. There was a door between the two apartments, and this of itself was a warning to those entering, who were not acquainted, to ascertain whether the

floor to the main building was on a level with the vestibule and the sidewalk, or whether it was reached by ascending or descending steps.''

In *Watkins v. Piggly Wiggly Bird Co.*, supra, the plaintiff alleged that her injuries were suffered due to the negligence of the defendant in maintaining a screen door at a street entrance higher than the sidewalk. The court in rendering its opinion stated that the trouble with her case was that the allegations in her complaint were either obviously not true or the standards fixed by the allegations for the determination of defendant's negligence and plaintiff's own want of care were false. The opinion continued:

''Upon opening the screen at that time, if she had observed, she would have seen the step-off to the sidewalk before stepping forward. On reaching the screen door, she pushed it open and stepped forward without looking, with the inevitable result in such cases— a hard fall and bodily injury. The proximate cause of her fall and injury was her inattention, and not because the step-off was dangerous in itself or in the conditions surrounding it.

\* \* \* \* \*

''In the present case, the difference in level was between the sidewalk and the entrance to the store, and, as was stated by the court in Hertz v. Advertiser Co., *supra,* plaintiff had no right to assume that the floor of the store building was on the same level as the sidewalk. *But, aside from this, she had entered the store from the street only a short time before, and knew of the difference in the level of the sidewalk and the floor of the store.*'' [Italics ours.]

*Viles v. Thunborg,* supra, involved an accident in a Spokane hotel. In that instance the plaintiff was visiting in the hotel and desired to go to a lavatory. She left the room of her hostess and proceeded down a dimly lighted hallway until she came to the lavatory, in which was a light. ''As she approached and entered the lava-

tory she observed that the floor was some five or six inches higher than the floor in the hallway'', and she said she ''saw it and stepped up on it''. With reference to the plaintiff's testimony the court observed:

''If she 'walked right out', then clearly she failed to exercise due care for her own safety, because as she entered the lavatory she was aware of the step-off. If she was 'looking for her bearings', then she was cognizant of the step-off, and it was incumbent upon her to exercise such care in stepping into the hallway as not to be precipitated onto the floor. This she failed to do.''

In support of its second proposition that the plaintiff was guilty of contributory negligence, the defendant in the case at bar relies upon *Hertz v. Advertiser Co.*, supra; *Brugher v. Buchtenkirch,* 167 N. Y. 153 (60 N. E. 420 ) ; and *McNaughton v. Illinois Central Ry. Co.,* 136 Iowa 177 (113 N. W. 844).

The Brugher case was that of a woman who called at an apartment house owned by the defendant, and entered the door, which was opened by a mechanical contrivance operated by the tenant upon whom she intended to call. She found that the hall ''was so dark that she could not see the floor, and proceeded back some distance till she came to a flight of steps, down which she fell, and met with the injuries for which she sought to recover''. In passing upon the question of plaintiff's contributory negligence, the writer of the opinion there remarked:

''But, whatever may be the reason that the plaintiff was unable to perceive the condition of the hall, that inability imposed upon her the duty of exercising greater caution, or of refraining from proceeding further in the building without first finding out where she might safely go.''

In the McNaughton case the plaintiff went to the defendant's station to board a train and while in the

women's waiting room she sought to go to the lavatory. In the waiting room there were two doors, some distance apart on opposite sides of the room, one labeled "Basement" and the other bearing appropriate designation. The lettering on both of the doors seems to have been somewhat obscured from her view, due to the crowd. By mistake she opened the door to the basement and fell to the basement floor. In discussing the matter the court observed:

"The company was not bound to anticipate that passengers will assume that every door from the room opens into a toilet, or that without the ordinary use of their senses they will precipitately open the doors therefrom and enter without thought as to where they lead. From such rooms usually there are several doors, and no one has the right to act unreservedly upon the belief that any door would be locked unless intended for some particular purpose. The fact that a door is there is a warning that it is the means of exit or of entrance from or to some other apartment, and a way up or down stairs, or to a baggage room, or to a closet; and no one has the right to assume, without knowledge, or its equivalent, the character of the place to which it affords access."

We have referred to and briefly discussed the six adjudications depended upon by the defendant on the two propositions that the evidence does not show negligence on its part and that plaintiff was guilty of contributory negligence. Among them there was one case each from the states of New York, Massachusetts and Iowa. We shall now direct attention to later decisions from those jurisdictions and from other states.

In *Pope v. Willow Garages, Inc.*, 274 Mass. 440 (174 N. E. 727), it appears that the defendant maintained a public garage. One Stainbrook kept his car at the garage and when he made the contract for its keeping he was told by the manager that although there was

no regular waiting room on the premises he could have anybody he wished to call and wait for him do so in the garage or in the office. We quote from the opinion:

"Three doors furnish entrance from Willow street. A large double door, its sill level with the sidewalk, opens into the garage; a single door, its sill higher than the sidewalk and reached by two steps, opens into the office; a third door, exactly similar, opens into the cellar stairway. * * * There were no signs on wall, or doors or windows. The cellar stairs lead directly down from the sill of the door, with no platform at the level of the sill."

The plaintiff in that case, who had never been at the garage previously, wished to meet some one there, "approached the premises from the south, went up the cellar doorway steps, opened the door, was thrown into the cellar as a strong wind pushed the door inward, and was injured". She sued defendant, alleging that it had failed "to lock, mark, protect or guard said cellar door and render the premises safe for the use of persons lawfully on the premises". The trial judge directed a verdict for the defendant, "with a stipulation that if the direction was wrong, judgment for the plaintiff in an agreed sum was to be entered". On appeal the judgment of the lower court was reversed. After stating that there was no direct invitation from the defendant to the plaintiff to come upon the premises, but that Stainbrook, who was keeping his car there, had directed the plaintiff to wait there for him, the court, with reference to the sufficiency of the evidence to go to the jury on the matter of defendant's negligence, observed:

"It is true that no express invitation was extended to Stainbrook to use the cellar door; but the show window could be found, in the opinion of a majority of the court, an invitation to enter the office by either of the exactly similar doors to the right or to the left of

it; and unless something were done to prevent the opening of the southerly door, or to warn against it, the defendant might be found to be negligent, if an invitee were injured in consequence of an attempt to enter there.''

As to the question of whether or not the plaintiff was guilty of contributory negligence, the court said:

''Serious question arises whether the plaintiff did not contribute to the accident by her own lack of care. A careful look through the window of the door would have shown that here was no entrance to the office, but instead a steep stairway; though it might not disclose that the stairs began with the door sill. Her eyes were streaming from the wind. She went on into an unknown space; yet, had it not been for the strong wind which drove the unlatched door in her grasp forward with her body, she might have stayed her progress on the sill. While the question is close, in view of the weather, the wind, the appearance of the building, in the opinion of a majority of the court it was rather matter of fact for the jury, who had seen the premises, than of law for the judge to determine.''

In *Downing v. Merchants National Bank,* 192 Iowa 1250 (184 N. W. 722, 20 A. L. R. 1138), the defendant was the owner of a bank building which faced south and was located immediately adjacent to the sidewalk. ''In the front of the building is a vestibule containing two doors. One door on the north side of the vestibule opens into the lobby of the bank. On the east of the vestibule is also a door which opens into a stairway leading to the basement. * * * The stairway in question starts immediately from the threshold of the east door. On the inside of the building the stairway is separated from the banking room by a balustrade or railing.'' About 5 o'clock in the afternoon of the accident the plaintiff, desiring to transact some business with an officer of the bank, entered the vestibule. It was a

bright day, with the sun shining. He had been there once or twice previously. The evidence tended to show that when he entered the vestibule the door leading to the bank was closed and the curtain drawn, and the door leading to the stairway was open. As he entered, the plaintiff looked through the opening across the balustrade and saw the officer of the bank in the banking room. In the belief that he was walking into the bank he proceeded through the open doorway and was precipitated down to the basement. The court held that in view of all the evidence in the case the jury might have found that the plaintiff was not guilty of negligence "in failing to look toward the spot where he was about to step as he passed through the open doorway". With reference to the question of negligence on the part of the defendant, the court said:

"It must be remembered that this building was one to which the public was invited to come for the purpose of transacting business. It certainly was for the jury to say whether the appellant was guilty of negligence in maintaining this building with the two doors in close proximity opening from this vestibule, one of which the public was invited to, and expected to enter, and the other of which opened directly into a precipitous stairway. It was for the jury to say whether it was negligence to permit the door leading to this stairway to be open under the circumstances disclosed by the record, if the jury found that it was open, and to leave the same without barrier or guard to protect one who might enter the vestibule. The question of appellant's negligence under all of the facts was clearly one for the jury, and the court did not err in not directing a verdict."

Before taking up and discussing the adjudications from the state of New York we shall refer to a few decisions from other jurisdictions. The defendant in the case of *Tierney v. Graves Motor Co.*, 185 Minn. 114 (239 N. W. 905), maintained a garage, the entrance to

the office of which opened on the sidewalk. Adjoining the office were large double doors leading into and out of the garage, for the use of automobiles. They opened toward the sidewalk. In one of the double doors was constructed a small door, "opening from the inside of the garage with no knob or latch or handle on the outside. It extended neither to the bottom nor the top, nor to either side of the big door". On a wooden cross-piece between two glass panels in the small door was the word "Push". This door extended to within thirteen inches of the floor, "and below was the cross-piece or base of the large door, extending to the floor and sidewalk level". The plaintiff went to the office door at night and found it locked. She then went to the double doors, knocked and received no response, but heard sounds inside the garage. She noticed the small door and pushed upon it to gain entrance, and as it opened she fell or stumbled over the base of the large door and was injured. The supreme court of Minnesota observed: "The question whether the defendant was negligent was for the jury. That one might stumble or fall in seeking entrance through such a door, more readily in the dark, is obvious; and it was a question for the jury whether the defendant was negligent in having the door as it was." As to want of care on the part of the plaintiff, the opinion stated: "Whether the plaintiff was guilty of contributory negligence was for the jury. So thorough an inspection could have been made as to show that in making the entrance it would be necessary to step over the thirteen-inch base of the large door. The law does not pronounce it contributory negligence not to do more than the plaintiff did. Whether she should have done more was for the jury."

In *Roach v. Wells Fargo Bank & Union Trust Company,* 102 Cal. App. 380 (282 P. 967), the defendant on the tenth floor of its office building in San Francisco

maintained a rest room for the general use and benefit of women who had occasion to use the facilities of the building. The allegations of the complaint were that the defendant "negligently and carelessly maintained the entrance to said rest room in this: that entrance to said rest room was gained from the hallway on said tenth floor of said office building through a doorway in which said doorway was hung a solid panel door, which said door opened inward from said hallway into said rest room; that immediately inside of the threshold of said doorway was a step about five inches in height down which all persons entering said rest room from said hallway would be compelled to step; that by reason of the construction of said doorway and said step it was impossible for any person, not familiar with said construction of said doorway and said step, to know of the existence of said step located immediately inside of the threshold of said doorway and immediately inside of said door". The court held that it was a question for the jury, on the facts in the case, to determine whether or not the defendant had omitted to exercise reasonable care in the construction of the premises. In referring to the contention that the plaintiff was guilty of contributory negligence, the opinion stated:

"The defendant claims that the plaintiff Clara J. Roach was guilty of contributory negligence. This attack rests upon the contention that Mrs. Roach was looking directly ahead and did not look down at the floor, and, if she had looked down, she would have been able to see that there was a variation in levels between the outside room and the inside room. All of these matters in the instant case presented questions of fact which were properly left to the jury."

In *Hanley v. James Butler, Inc.*, 167 App. Div. 329 (153 N. Y. S.) 39, the defendant maintained swinging

doors between its grocery store and butcher shop. These doors were composed of wood and glass, the lower two feet thereof being solid. They had no handles. The floor of the butcher shop was nine and one-half inches lower than the floor of the grocery store. The platform beneath the doors extended from the grocery store thirteen and one-half inches beyond the swinging doors and then dropped to the lower level of the butcher shop. The plaintiff had been in the grocery store on several occasions prior to the date of her injury but had never before been in the butcher shop. On that day she went from the grocery store to the butcher shop to make a purchase, and as she pushed the swinging doors open "she made one step and as she stepped her heel came on the edge of the platform and she fell to the floor" of the butcher shop.

At the close of her case the defendant moved for a nonsuit on the ground that plaintiff "had failed to prove negligence on the part of the defendant and her own freedom from contributory negligence". This motion was granted, and the plaintiff appealed. In holding that the trial court committed error and that the question of defendant's negligence and plaintiff's contributory negligence should have been determined by the jury, the appellate division of the supreme court quoted with approval from *McRickard v. Flint,* 114 N. Y. 222 (21 N. E. 153), as follows:

" 'It was the duty of the plaintiff to exercise reasonable care, and to take observation of that which was apparent to view as he proceeded. But what is due care and diligence depends upon circumstances. The same precautionary means requisite to relieve a party from the charge of negligence when he approaches known places of danger, or places where danger may be apprehended, may not be required of him when he has no occasion to suppose that danger may

be encountered. It can not be said that the plaintiff upon this occasion was required to apprehend that there might be an exposed elevator pit in the place where he entered. The fact that the door was partly opened enabled him to suppose it was a suitable place of entry, so that the question is whether not seeing it was necessarily negligence on his part. That is not so, unless he was required to stop and take careful observation of the place when he entered upon the threshold and before he proceeded to further enter into the room. * * * Here the plaintiff in stepping into the room, the first step he took after his entry onto the threshold at a partially open door, received the injury from a cause which he had no apparent reason to expect and which he failed to see until too late to avoid the calamity.' ''

In the later case of *Johnson v. Desmond,* 165 N. Y. S. 290, the plaintiff entered the hall of a building by way of the vestibule, and walked to the door which opened into defendant's saloon. As he opened the door he noticed the reflection from linoleum on a lower floor level. He did not, however, notice the steps leading from the hall to the saloon. Instead of trying to find out whether there were steps or a step leading down into the saloon, ''he 'continued to go in'—'stepped in,' as he thought''. The court held that plaintiff's proof failed to show the exercise of any degree of care on his part and that such proof was essential to make out a cause of action. There the case of *Hanley v. James Butler, Inc.,* supra, was relied upon by the plaintiff. The court, however, distinguished that case from the one under consideration, in the following language:

''In that case it appeared that the defendant, proprietor of a grocery store and butcher shop, maintained double swinging doors between the one and the other, the platform extending from the grocery store thirteen and one-half inches beyond the door, and then dropping

to the lower level of the butcher shop by a step of nine and one-half inches; that the doors swung in both directions upon double hinges, and each of them was thirty-three inches wide, had no handles, was composed of wood and glass, the lower two feet being solid; that the plaintiff had previously been in the grocery store, but had never been in the butcher shop;   *   *   *   that as she pushed the door open she made one step, and as she stepped her heel came on the edge of the platform, and she fell to the floor, receiving the injuries complained of; that there was nothing to call the attention of the plaintiff to the difference in level between the two stores.

"Manifestly there is a clear distinction between the case cited and the present one. In the Hanley case there was no knob or handle on the door by which a person proceeding from the grocery store to the lower level butcher shop could pull the door toward him into the grocery store and thus be enabled to observe the difference in level between the two stores; and, the platform extending only thirteen and one-half inches beyond the grocery store, it is apparent that one pushing the swinging door ahead of him into the butcher shop would, even in the exercise of reasonable care, be likely to step on the edge of the platform and lose his balance, as the plaintiff did in the case cited."

Only one decision concerning a revolving door has come to our attention, that of *Clark v. New York Hotel Statler Co.,* 223 App. Div. 237 (227 N. Y. S. 671). There "the plaintiff sued the defendant in negligence, claiming that she was struck by the rapidly revolving door, and fell because the place of the accident was dangerous, in that the revolving door was placed too close to a step leading to the sidewalk, and that this step was not within the vision of persons leaving the defendant's premises by means of that door".

The case was submitted to the jury, which returned a verdict in favor of plaintiff. That verdict was set aside and judgment was entered for the defendant, on

the ground that no cause of action was proved against the defendant and on the further ground that plaintiff was guilty of contributory negligence as a matter of law, in stepping into the revolving door while it was in motion. On appeal this judgment was reversed and in support of the court's holding the case of *Hanley v. James Butler, Inc.,* supra, was cited as an authority. The contention was made by plaintiff that the proximity of the step to the revolving door created a dangerous situation. The defendant, however, argued that the act of some third party, revolving the door, was the cause of the injury. The court, in passing upon this matter, said:

"The plaintiff testified that she was thrown off her balance by this step at the immediate edge of the doorway. Whether the defendant maintained an exit inherently dangerous presented a question of fact for the jury. It was for the jury to determine whether the proximate cause of the accident was the location of the step in question. Whether the plaintiff was guilty of contributory negligence, in entering the revolving door while it was in motion, also presented a question of fact for the jury.

"It is common knowledge that revolving doors are for considerable periods of time constantly in motion, and that they are commonly entered by the public while in motion. The plaintiff was not injured in entering the door. She testified she entered the door carefully, and was struck after entry was completed and as she was about to emerge. Even though the act of some third person in revolving the door at an excessive rate of speed was a concurrent cause of the accident, that would not relieve the defendant from liability. As was said by Judge Gray, in Sweet v. Perkins, 196 N. Y. 482, 485, 90 N. E. 50, 51: 'There may be more than one proximate cause of an accident, if each of the causes asserted can be seen to have been an efficient one, without which the injury resulting would not have been sustained. If the negligent acts of two or more persons

concur in contributing to an accident, the injured person may hold them, jointly and severally, liable. Where concurrence in causes is charged, the test is, simply, could the accident have happened without their cooperation?' ''

There are many decisions bearing in one way or another upon the duty of owners or occupants to maintain buildings in a safe condition, free from pitfalls or unseen hazards to those having business on the premises. Such are cases having to do with elevator shafts, confusion arising from close proximity of doors opening upon the same level and doors opening upon stairs or a step-off, steps leading from one floor level to another, dark passageways, door sills, and the like. See, in this connection: *Clopp v. Mear*, 134 Pa. 203 (19 Atl. 504); *Gordon v. Cummings*, 152 Mass. 513 (25 N. E. 978, 23 Am. St. Rep. 846, 9 L. R. A. 640); *Foren v. Rodick*, 90 Me. 276 (38 Atl. 175); *Kern v. Great Atlantic & Pacific Tea Co.*, 241 N. Y. 600 (150 N. E. 572); *Kennedy v. Cherry & Webb Co.*, 267 Mass. 217 (166 N. E. 562); *Frey v. Russian Village, Inc.*, 72 Fed. (2d) 261.

The case here before us is clearly distinguishable from the ordinary instance of accident through the use of door or doorway. The plaintiff did not have exclusive control of the revolving door through which she was passing. It was intended to be used by at least four people at one and the same time, both entering and leaving the building although going in the same anti-clockwise direction. Plaintiff could not have stopped the door in the course of its movement to see whether or not the exit was on a level with the sidewalk. In leaving the building she was not directly facing the exit, but was following the door partition in front of her and was proceeding not in a straight line but sub-

stantially parallel to the circumference of the circle within which the door revolved. When she came to the exit she was obliged to change her circular course and walk forth in a line practically at right angles to the building.

While she was moving with the door she had to keep up with it, and on leaving her first concern was to effect her exit before being struck by one of the partitions of the door or being forced against the wall of the entrance. Moreover, the movement of the door was not uniform, in that there would at times be sudden jars due to vigorous pushes upon the door partitions; or the revolution might be retarded when controlled by people of slow step or limited strength.

As already stated, there were three entrances on Fifth street to defendant's premises, all equipped with revolving doors. Two of the entrances were on a level with the sidewalk.

■ From all the facts in the case we can not say as a matter of law that the defendant was free from negligence in maintaining a revolving door at the third and most northerly entrance on Fifth street, in close proximity to a narrow ledge or step-off, or that the plaintiff was guilty of contributory negligence in not observing this ledge and avoiding the injury which she sustained.

■ Nor can we say as a matter of law that the jarring of the door as plaintiff passed through it, to which she testified, was the sole and contributing cause of her mishap. She referred to this jar as a "jerk", and it can readily be understood that the sudden pushing of the entire door by some one who stepped into one of the compartments would impart the effect of a jerk to any one who had hold of the bar on a door partition.

The defendant stresses the point that according to plaintiff's testimony her injury resulted from the jarring of the door by some one who was using it at the time she was passing through it. The contention is made that defendant was in nowise responsible for the jarring or "jerk" and that plaintiff's own testimony in this regard negatives the charge of negligence against defendant. This argument is untenable. The defendant knew or should have known that several people would use the door at the same time and that a sudden push by one entering might occur at any time and have the effect of a jerk upon any one else within the door who had hold of a bar intended for use by those passing through the door. Even though the jarring or jerking of the door may have been a concurring cause of plaintiff's injury, still, by reason of defendant's permitting the door to be constructed and used as was done, it can not be said as a matter of law that the defendant was free from fault in connection with the jarring or jerking.

Moreover, the possible existence of one or more concurring causes of the mishap would not necessarily relieve defendant from liability. As was said in *Clark v. New York Hotel Statler Co., Inc.,* supra, quoting from another New York case cited in the opinion therein: "There may be more than one proximate cause of an accident, if each of the causes asserted can be seen to have been an efficient one, without which the injury resulting would not have been sustained. If the negligent acts of two or more persons concur in contributing to an accident, the injured person may hold them, jointly and severally, liable. Where concurrence in causes is charged, the test is, simply, could the accident have happened without their cooperation?"

■ The remaining question to be disposed of is that of the correctness of the instructions requested by defendant and given by the trial court, which we have above quoted. In the instruction which we have numbered "1" the court told the jury that the change in level from the street to the floor was "in a perfectly obvious place to the view of all persons" and that "no duty rested upon the defendant to warn the plaintiff of the existence of the step". One of the questions involved was whether or not this step actually was within plain view of anybody leaving the bank building through the revolving door, and whether or not a reasonably prudent man would have or should have seen it. If the jury found from the evidence that the defendant was negligent in maintaining the revolving door in close proximity to the step, then necessarily the defendant was chargeable with the duty of warning plaintiff and others, using the door, of the danger. The instruction given clearly invaded the province of the jury.

■ The second instruction above quoted also invaded the province of the jury by directing it that "it could not be considered negligent on the part of the defendant to have a step leading from the street to the floor" of the building; and, further, by instructing the jury that the defendant could not be considered negligent on the ground that it "used a revolving door for the purposes of egress and ingress from and to its premises". It is plaintiff's contention that the use of the revolving door in close proximity to the step, under the circumstances of the case, constituted negligence. The court's action in taking up separately each factor of the charge of negligence, setting it off by itself and labeling it as not constituting negligence, was confusing and misleading to the jury and in effect removed from that body the questions to be determined by it.

▉ The third and last instruction above quoted directed the jury to disregard the evidence concerning the weight of the door and "the strength necessary to push it". The weight of the door and the force required to revolve it were clearly matters to be considered by the jury and were not required to be alleged as separate factors of negligence. Moreover, such evidence might have some bearing on the question of whether or not plaintiff was guilty of contributory negligence.

The giving of the three instructions above quoted was erroneous, and prejudicial to the plaintiff. The judgment appealed from is hereby reversed and the cause remanded for further proceedings not inconsistent with this opinion.

RAND, J., concurs in the result.

CAMPBELL, C. J., not sitting.

———

ROSSMAN, J. (dissenting). It seems to me that the decisions reviewed in the opinion of the majority passed upon facts unlike those before us, and that the principles employed by them do not demand a conclusion that the defendant was negligent and that the plaintiff was free from negligence. Moreover, I believe that note should be taken of the testimony which will now be mentioned. Plaintiff's husband, who passed through the door immediately after his wife, gave the following testimony upon direct examination:

"Q. Now, when you got out, you say your wife was lying on the sidewalk?

"A. Yes, sir.

"Q. About where were her feet relative to that little offset there?

"A. Well, she was kind of lying down—she was lying right on the edge of this. One foot was under and the other foot was up this way (indicating).

"Q. When you say on the edge of it, was she still on this edge between the door and the sidewalk?

"A. Well, there is a white marble thing like this (indicating). She was lying right in there.

"Q. Then she would be lying on the ground between the door and the sidewalk; she wasn't out on the sidewalk? Was she out on the sidewalk, part of her body?

"A. Part of her body was on the outside of the drop.

"Q. On the outside of the drop. And then part of the body on top?

"A. One foot was inside, just laying right on the raise there."

No other witness testified upon the same subject, and this testimony is not explained or modified by any other part of the husband's evidence.

By reverting to the testimony of the plaintiff (quoted in the opinion of the majority) it will be seen that when she was asked, "Was it that jar that knocked you down to the pavement?" she replied, "I think it was." Thus, she says that it was a jar, imparted to the door by some other user of it, that tripped her feet. She thereby excluded, as a cause, the drop-off that lay ahead. This is in accord with the testimony of her husband whose above-quoted testimony indicates that a part, at least, of plaintiff's body had not reached the sidewalk even after she came to rest after the fall. That these are the only reasonable conclusions that can be drawn from the record is made certain by the following testimony given by the plaintiff upon redirect examination (quoted by the majority) : "I meant when the door gave a jerk, that it was a jerk that threw me forward over the step and that is how I made the fall." Thus, the two and one-half inch step-off was not the cause of plaintiff's loss of her footing, although it prolonged the fall two and one-half inches. But if an

incline, as suggested by the plaintiff, had been substituted for the step-off the fall would have been just as long. We can, therefore, dismiss the step-off as the cause of plaintiff's injury.

This incident happened in broad daylight. The plaintiff made no charge that the door was defective. She admits that she had passed through the other two doors adjacent to it on more than one occasion, and therefore must have been acquainted with the operation of revolving doors of the kind she passed through on November 15, 1930. She concedes that one could look through the glass panels after entering the door and observe the sidewalk out beyond; however, upon this occasion, for a reason which the plaintiff did not disclose, she did not look.

It is my belief that the evidence fails to disclose any fault upon the defendant's part, and I, therefore, believe that the judgment of the circuit court should be affirmed.