# Central of Ga. Ry. Co. *v.* Carlisle.

*Damage for Injury to Passenger.*

(Decided Nov. 14, 1911. 56 South. 737.)

1. *Carriers; Passengers; Discharge in Setting Down.*—It is the duty of the common carrier to safely deliver its passengers at the station to which they have paid their fares, including the announcement of the arrival of the train at the station, with reasonable opportunity there to leave the cars, and when it has done these things and has afforded a safe and convenient means for alighting, the carrier's duty has been performed.

2. *Same; Assisting Passenger to Alight.*—Except in cases where a carrier has accepted a passenger who is unable, through disability, to care for himself, and such disability is known at the time of acceptance, or where a passenger is too sick or disabled to alight without aid, it is not the duty of a carrier to assist its passengers to alight.

2. *Same.*—Where a carrier offers through its agents to assist a passenger to alight from its cars, it is bound to exercise due care in rendering such assistance.

4. *Same.*—Where a woman passenger is accompanied by her husband who is apparently capable of assisting her, the duty of the carrier to give her assistance, is suspended, and no recovery can be had for a failure to exercise it.

5. *Same; Rules of Carrier.*—A non conformity to the rules of a carrier which requires conductor to assist lady passengers in alighting would not impose liability on the carrier, unless known to and relied upon by the passenger, or her husband, as such duty was wholly gratuitous.

6. *Same; Passenger Accompanied by Husband.*—The fact that the husband was carrying a baby, did not render him unable to assist his wife in alighting, in such a sense as to make it the duty of the carrier's agent to assist her.

7. *Same; Who Are Disabled Passengers.*—Although a female passenger was carrying a valise and umbrella and fan when she attempted to alight from the car, her condition was not one of such obvious infirmity or disability as to entitle her to the assistance of the carrier's servants or agents in alighting.

8. *Same; Evidence; Sufficiency.*—The evidence stated and held insufficient to show a rule requiring conductors to physically assist lady passengers in alighting.

9. *Same.*—The evidence in the case examined and held insufficient to show that the steps of the train were defective, so as to cause the passenger to fall while alighting.

[Central of Ga. Ry. Co. v. Carlisle.]

APPEAL from Coosa Circuit Court.

Heard before Hon. H. P. MERRITT, Special Judge.

Action by Mrs. Bennie May Carlisle against the Central of Georgia. Railway Company for damages for injuries received in alighting from one of defendant's passenger trains. Judgment for plaintiff and defendant appeals. Reversed and remanded.

GEORGE P. HARRISON for appellant. When a carrier safely transports a passenger to the station to which he has paid his fare, announces the arrival at the station and affords reasonable and safe opportunity to alight, it has discharged its duty.—5 A. & E. Enc. of Law, 579; 18 A. & E. R. R. Cases, 245; 42 Miss. 607; 97 Am. Dec. 478; 38 Fed. 825. There is no rule requiring carriers to assist passengers in every case to get off and on their vehicles.—27 S. C. 268; 30 A. & E. R. R. Cases, 571; 116 In. App. 171; 73 Ia. 579; 55 Minn. 271. The assistance of the conductor is purely a matter of courtesy, and not at all encumbent upon him in the line of his duty.—18 A. & E. R. R. Cases, 245; 42 Miss. 607; 97 Am. Dec. 478; 73 Ia. 581; 106 N. Y. 136. Of course, if the passenger needs special assistance, either from sickness or other misfortune, and this fact is known to the servants of the carrier, it is their duty to render it, but they are not required to anticipate. —97 Pac. 1109. A rule requiring such assistance is purely voluntary, and is not available unless known to and relied on by the passenger to his hurt.—6 Cyc. 611; 126 Mo. 392.

RIDDLE, ELLIS, RIDDLE & PRUETT, for appellee. Failure to conform to the rules of the company requiring conductors to assist lady passengers to alight is actionable negligence.—6 Cyc. 611. A carrier is bound to set

a passenger down safely.—51 Am. St. Rep. 303. It is
the duty of a conductor to assist passengers to alight
who are encumbered with baggage.—97 Pac. 1109.
Where the evidence is in conflict on any material ques-
tion such question is properly submitted to the jury
for its decision, and when decided, the finding is final.

PER CURIAM.—1. It is the duty of a railroad com-
pany, as a common carrier of passengers, to safely de-
liver its passengers at the station to which they have
paid their fare. *N. Y., etc., Ry. Co. v. Doane,* 115 Ind.
435, 17 N. E. 913, 1 L. R. A. 157, 7 Am. St. Rep. 451,
456. This includes the announcement of the arrival of
the train at the station, with a reasonable opportunity
to there leave the cars. *Raben v. Central Iowa R. Co.,*
73 Iowa, 579, 35 N. W. 645, 5 Am. St. Rep. 708; *Hurt
v. St. Louis, etc., R. Co.,* 94 Mo. 255, 7 S. W. 1, 4 Am.
St. Rep. 374; *Sevier v. V. & M. R. Co.,* 61 Miss. 11, 48
Am. Rep. 74. And when it has done these things and
afforded also a safe and convenient means for alighting
and departing, the carrier's duty has been fully dis-
charged. *Raben v. Central Iowa R. Co.,* 74 Iowa, 732,
34 N. W. 621.

In accordance with these principles, it has been set-
tled by an overwhelming array of authorities that the
law does not impose upon the carrier the duty of assist-
ing passengers to alight from its cars. *Hanlon v. Cen-
tral R. Co. of N. J.,* 187 N. Y. 73, 79 N. E. 846, 10 L.
R. A. (N. S.) 411 and note, 116 Am. St. Rep. 591; *Cen-
tral R. Co. v. Cruse,* 123 Ky. 463, 96 S. W. 821, 29 Ky.
Law Rep. 914, 8 L. R. A. (N. S.) 299, citing and dis-
cussing many cases; *McGovern v. Interurban R. Co.,*
136 Iowa, 13, 111 N. W. 412, 13 L. R. A. (N. S.) 476,
125 Am. St. Rep. 215; *St. Louis, etc., R. Co. v. Green,*
85 Ark. 117, 107 S. W. 168, 14 L. R. A. (N. S.) 1148;

[Central of Ga. Ry. Co. v. Carlisle.]

*Ruben v. Central Iowa R. Co., supra; Hurt v. St. Louis, etc., R. Co., supra;* 5 A. & E. Ency. Law (2d Ed.) 579; 6 Cyc. 11.

There is a generally recognized exception to this rule, however, where a person is accepted as a passenger who is unable, through physical or mental disability, to care for himself, and this disability is known or made known to the carrier at the time of acceptance. *Williams v. L. & N. R. Co.,* 150 Ala. 324, 43 South. 576, 10 L. R. A. (N. S.) 413; *Ill. Central R. Co. v. Cruse, supra,* note.

By the weight of authority, also, it is held to be the duty of the carrier to assist a passenger in alighting if, obviously to its agents in charge, such passenger is then too sick or infirm or disabled to safely alight without aid. 6 Cyc. 611, and cases cited; case note to *Ill. Central R. Co. v. Cruse, supra.* But it is not the carrier's duty to anticipate such disabilities or needs, nor to be on the lookout for them. *Ill. Central R. Co. v. Cruse,* 123 Ky. 463, 96 S. W. 821, 29 Ky. Law Rep. 914, 8 L. R. A. (N. S.) 303.

Again, by all the authorities, it is held that if assistance is actually proffered to a passenger, whether in need of it or not, injurious negligence with respect thereto renders the carrier liable. *Williams v. L. & N. R. Co.,* 150 Ala. 324, 43 South. 576, 10 L. R. A. (N. S.) 413; *Hanlon v. Central R. Co.,* 187 N. Y. 73, 79 N. E. 846, 10 L. R. A. (N. S.) 411, and note, 116 Am. St. Rep. 591.

2. Applying these principles to the facts of the present case, it is clear that the condition of the plaintiff when she sought to alight was not one of obvious infirmity or disability; although she was carrying "a valise, a parasol and a fan"; nor does it appear that the conductor even saw what she had in her hands as she came

out and descended the steps of the car. Neither she nor her husband, just in front of her, asked for or appeared to desire assistance, and there was no duty to volunteer to give it; nor was she relying upon any one's assistance negligently rendered or withheld.

3. It is insisted, however, that the carrier's rules required its conductors to assist lady passengers on and off its cars. The only evidence on this point is the statement of the conductor, Gordie, that "the rules require you to *see them* (ladies) safely on and off." He further stated: "I have had the practice a good many years when ladies have baggage to help them off when they ask me, and very often when I find an old gentleman or an old lady I help them off without being asked."

This falls very far short of tending to show a rule requiring conductors to physically assist lady passengers in alighting. And, even if such a rule were conceded, the duty was gratuitously assumed, and, unless known to and relied upon by such a passenger to her hurt, nonconformity thereto by its agents would impose no liability on the carrier. *Barney v. Ry. Co.* 126 Mo. 392, 28 S. W. 1069, 26 L. R. A. 847.

4. There is another point of view unfavorable to plaintiff's contention. If a person otherwise entitled to receive the volunteer aid of the carrier's agents in alighting from the car is nevertheless attended by husband or friend apparently capable of giving the needed assistance, the duty of the carrier is suspended, and assistance—at least volunteer assistance—need not be proffered. As stated in *Hurt v. St. Louis, etc., Ry. Co., supra*: "When a man becomes a passenger on a railroad car with his wife and little ones, he is their guardian and protector; he has the supervision of their safety; and the family group, so far as the act of debarkation

from the cars is concerned, is to be regarded to all intents and purposes as a unit, an indivisible integer." 94 Mo. 264, 7 S. W. 4, 4 Am. St. Rep. 379.

In the present case, inability of the husband to render the needed help cannot be predicated upon the fact that he carried a baby; for at least one arm may have nevertheless been left entirely free and available for other uses. But the husband testified that, although his wife was "right behind him," he, like the conductor, "was looking at the crowd."

5. It is the contention of the plaintiff that, regardless of the defendant's alleged duty to assist the plaintiff in alighting, she was entitled to recover on account of a defect in the steps of the car which proximately produced her fall and consequent injury.

Her testimony on this point is as follows: "I had started down the steps that led down to that footstool. I went to the steps and something caught my heel and pulled it off and I fell. * * * *I don't know what it was that threw me down.* There was something caught the heel of my shoe and threw me down." She further says: "I did not see any defect there at all in the platform or the steps—I never noticed." And her husband says: "I did not see any defect at all on those steps or that platform or the ground where she alighted from the train. I did not notice any." On this same point the conductor says: "I did not make a thorough examination of the steps when I picked up the heel. There was nothing on the step whatever, and I used the car from there to Columbus. I examined the steps only like one who would look to see if there was anything there. There was nothing fixed about the steps that would catch a shoe heel and throw one down. There was no hole or crack in them, and no nails sticking out.

They were in good condition." It clearly appears without dispute that the detached section of plaintiff's shoe heel was picked up by the conductor on the second step descending, and that it was lying there loose.

The plaintiff says she had worn these particular shoes a good deal before, but her husband says they were new Sunday shoes, with heels that tapered a good deal down to a point—different from her everyday shoes in this respect.

From such evidence as this not even loose conjecture —to say nothing of rational inference—can attribute plaintiff's accident to a defective condition of the car steps, and it is too plain for argument that the defendant was entitled to the general affirmative charge.

Reversed and remanded.

NOTE.—The foregoing opinion was prepared by Mr. Justice SOMERVILLE, of the Supreme Court, before the transfer of the case to this court, and is adopted by this court.