# Louisville & Nashville R. R. Co. *v.* King.

### Personal Injury Action.

(Decided June 8, 1916.   Rehearing denied December 30, 1916.
73 South. 456.)

1. **Carriers; Passengers; Duty to Assist.**—Where an able bodied young woman was injured while alighting from a train, and while carrying two handbags, but not requesting assistance, although the conductor had promised to assist her, her injury could not be referred to the negligence of the conductor of the train.

[Louisville & Nashville R. R. Co. v. King.]

2. Same; Duty.—Unless passengers are under known physical or mental disability, it is the duty of the conductor to care for all passengers alike.

3. Trial; Argument of Counsel; Withdrawal.—The statement by counsel to the jury that if plaintiff had sued for more than $3,000, defendant corporation could have removed the case to the Federal court, a reason for not suing for money, was an improper argument, and should have been excluded, and the fact that it was withdrawn by counsel did not cure the error.

4. Appeal and Error; Reversal; Excessive Damages.—Where it was apparent from the record that the judgment was greatly excessive, and that evidence had been introduced, amounting to a mere speculation, that plaintiff's mishap occurring ten months afterward had been caused by the injury, no such claim being made in the complaint, the judgment will be reversed and a new trial awarded.

APPEAL from Chilton Circuit Court.

Heard before Hon. W. W. PEARSON.

Action by Sula King against the Louisville & Nashville Railroad Company for damages for personal injuries. Judgment for plaintiff and defendant appeals. Reversed and remanded.

GEORGE W. JONES, and SMITH & GERALD, for appellant. MIDDLETON & REYNOLDS, and HILL, HILL, WHITING & STERN, for appellee.

SAYRE, J.—(1, 2) No tenable objection was taken to the complaint. The trouble with plaintiff's case arose out of the evidence. The evidence showed that plaintiff was young and ablebodied; she had been accustomed to labor of a sort that necessarily implied at least the usual strength of women of her age; she did the work of her household; she did the cooking and washing, and she helped her husband in the field. There was nothing to put her in the class of the aged, the very young, infirm, or helpless passengers, to whom railroad companies are under obligation to furnish aid in getting on or alighting from their trains. It was the duty of those in charge of the train to announce the station, to stop the train, and hold it such length of time as gave the passengers a reasonable opportunity to alight in safety. There is no intimation that defendant failed of its duty in these respects. Plaintiff was under no disability. She had two hand bags or grips. The conductor might have handled these impediments for her as a matter of courtesy, but he was under no public general duty to do so, nor was there anything in the condition of the plaintiff that raised a special duty as to her. This seems to be the holding of the authorities generally (see *Central of*

*Georgia v. Carlisle*, 2 Ala. App. 514, 56 South. 737, where numerous authorities are cited), and is a reasonable rule in view of provisions made for checking unwieldy baggage and the duties which trainmen owe to all passengers in common. The conductor's alleged previous promise did not enlarge his duty in this respect. But, even so, in view of the conductor's duty to other passengers, the plaintiff should have called his attention to the fact that she desired assistance. Instead, she picked up her grips and started to alight from the train, along with the other passengers, as if she were abundantly able to manage the situation for herself; and we have been unable to find in the evidence any indication that she was not as able as the ordinary passenger. In no aspect of the case presented by the evidence can plaintiff's fall be referred to negligence or wrong on the part of the conductor. Aside from passengers under known physical or mental disability, it was his public duty to care for all passengers alike. He stood on the platform of the coach, looking over his passengers as they came out of the coaches, while the flagman stood at the bottom of the steps, assisting them to alight. So far as the evidence went to show, the conductor was not under legal duty to do more. The court did not follow this law in ruling upon instructions requested by defendant.

(3) In his closing argument to the jury counsel for the plaintiff ingeniously said to the jury: "I want to tell you the reason that we did not sue for more than $3,000 in this case. If we had sued for more than that amount, the defendant, the Louisville & Nashville Railroad, being a foreign corporation, could have removed the case to the federal court."

The court overruled defendant's motion to exclude this statement from the jury, made on the ground that the same was improper argument. The defendant duly excepted. Then plaintiff's counsel said he would withdraw the argument, whereupon the court said to the jury: "The argument is withdrawn." This argument, if it may be so called, went to the jury with the court's approval. It was improper. Its illegitimate implications and tendencies were, or now are, not obscure. The wrong of the argument, having been done, could only be cured by the intervention of the court.—*Birmingham Railway v. Drennen*, 175 Ala. 338, 57 South. 876, Ann. Cas. 1914C, 1037. However, had there been no other error, and had the result been fair and reasonable, we do not say that we would reverse for this matter alone.

[Louisville & Nashville R. R. Co. v. King.]

(4) Plaintiff had judgment for $3,000. Plaintiff being entitled, if at all, to compensation only, it is apparent on the entire record that the damages awarded were greatly excessive. In connection with this ground of the motion for a new trial, even though there had been no error committed at the trial, the affidavits offered by defendant should have been considered. The complaint carried no notice that plaintiff would claim to have suffered a miscarriage on account of the accident. And in fact there was nothing more than a doubtful opinion that plaintiff's fall could bring on a miscarriage in case of a future pregnancy. Plaintiff became pregnant some months after the fall shown in the evidence, and then, about a month after, the house in which she lived was burned, at which she seemed to be much excited and exhausted, and about 10 months after her fall from the steps, she suffered the miscarriage. There is at best for plaintiff nothing more than a speculation as to the cause of this misfortune. Some of her neighbors made affidavits to the effect that in the meantime she seemed to enjoy her usual health and strength, did her usual work, helped her husband cultivate his crop, picked cotton, and "toted" her 17 months old baby around the neighborhood. These affidavits were not contradicted in any respect. While it is altogether probable that the evidence as to this event (which happened only about a month before the trial, and 8 months after suit brought) had much weight with the jury, we have not been able to see that the evidence offered at the trial afforded any substantial basis for a rational deduction that the fall had any causal connection with the miscarriage. In short, and apart from the court's error in its ruling upon the instructions requested, the amount of the verdict exhibited the operation of some improper consideration. Such being the case, and error having intervened upon the trial, the judgment must be reversed, and the cause remanded for a new trial.

General affirmative charges as to several counts were requested by defendant. These charges were bad in form.—*Bessemer Liquor Co. v. Tillman,* 139 Ala. 462, 36 South. 40. For this reason, if no other, they were not erroneously refused. We have not deemed it necessary at this time to say whether such charges, if properly framed, should have been given.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.