67 So.2d 893

**ATLANTIC COAST LINE R. CO.**
v.
**J. B. MAYNARD CONST. CO.**

5 Div. 563.

Supreme Court of Alabama.

Nov. 5, 1953.

Mullins & Byrd, Alexander City, for appellee.

Paul J. Hooton, Roanoke, for appellant.

STAKELY, Justice.

The Atlantic Coast Line Railroad Company, a corporation (appellant), is a railroad running through the Town of Wadley in Randolph County, Alabama. The railroad, among other things, is a common carrier for hire of freight and furnishes its own equipment and tracks for this purpose. J. B. Maynard, who does business under the name of J. B. Maynard Construction Company (appellee), is a contractor and builder of roads and as such has occasion to need the use of railroad facilities

in hauling materials, especially bulky materials necessary for the building and construction of roads and highways.

At the time involved in the present case, J. B. Maynard was building and constructing a road or highway not far from the Town of Wadley and for this purpose slag in carload lots was delivered to him by the railroad at Wadley.

Slag is a heavy material used in road building and is shipped in bulk usually in carload shipments. The customary method of shipping slag is by open cars, the type of cars used to haul coal or other like substances. To load one of these cars the slag is poured or put in the top of the car. The usual method in unloading slag from a railroad car is by opening the gate or door which is in the floor of the car, so that the slag will come out of its own momentum or by gravity.

In the present instance the slag had to be carried from the railroad cars to the place where the road or highway was under construction and for such transportation dump trucks were used. The method used was to place a belt or conveyor beneath the opening in the floor or bottom of the car and thereby transfer the slag to the dump truck.

Just prior to June 21, 1950, the railroad placed a string of nine cars loaded with slag on the "Hill Track" at Wadley, Ala. Tendencies of the evidence showed that these cars were not "bunched" but were "extended", with the result that the pin could not be removed between any of these cars. The brakes had been set on each of these cars by the railroad when they were placed on the sidetrack. The brakes were of standard make and were in good condition. After the cars had been placed on the "Hill Track" by the railroad they were turned over to the appellee and he had custody and control of the cars. The "Hill Track" was on an incline, some tendencies of the evidence showing the grade to be between 2% and 3% while other tendencies of the evidence show the grade to be from 7% to 10%. The railroad agreed to place the cars loaded with slag on the "Hill Track" so that the appellee could use the conveyor system to unload the cars. This method of unloading was expedited if the body of the truck was on an approximate level with the bottom of the slag car.

On June 21, 1950 in the afternoon while the appellee was attempting to uncouple the front car so that it could come down the incline and be placed over the conveyor in order to be unloaded, about five or six of these cars loaded with slag got loose and went down the incline of the "Hill Track", with the results which we shall later describe. Tendencies of the evidence showed that there was an effort to release the front car so that it could be placed over the conveyor, that the brakes on the front car were released and an effort was made to get the front car uncoupled, but that could not be done and the cut of cars went off down the hill of their own momentum and of their own power. A man employed by the defendant was on the front car, where he stayed until he was forced to jump just before the string of cars reached the car at the bottom of the incline which it struck. He tightened the brakes on the car which he was on, when the cars started to move. The brakes on the other cars had not been released or tampered with in any way. As a result several cars of the railroad were damaged and derailed, the track of the railroad was torn up, damaged, and had to be repaired and it was necessary to have a wrecker replace the damaged cars on the rail. This suit was brought by the railroad company against J. B. Maynard Construction Company for the damages which have been described. Trial of the case resulted in a verdict and judgment for the defendant and hence this appeal.

When the railroad placed the cars containing the slag on Hill Track and turned them over to the appellee, a bailment was created for hire and use. In this situation the law imposed upon the bailee, appellee, the duty of exercising that degree of care with respect to the property which a man of average prudence and diligence would bestow on his own like property under like conditions. The law denominates this degree of care as ordinary care. Higman v. Camody, 112 Ala. 267, 20 So. 480, 57 Am.St.Rep. 33. The case was tried by the appellant on the theory that the appellee in handling the cars which had been put at his disposal was negligent and that this

negligence proximately resulted in the injury to the property of the railroad. To the negligence counts the appellee pleaded the general issue and contributory negligence. In its oral charge to the jury the court charged the jury only on the theory of negligence and contributory negligence and at the conclusion of the oral charge both sides announced that they were satisfied with the charge. While it is stated in brief for the appellant that the affirmative charge was asked in writing by the appellant, no such charge appears in the record. § 270, Title 7, Code of 1940; Morris v. Hall, 41 Ala. 510.

**I.** We have then a case which turns on the issues of negligence on the part of the bailee and contributory negligence on the part of the railroad. It is well at this point to say that while Higman v. Camody, supra, indicates that as the case progresses the burden of proof shifts from one side to the other according to the developments in the evidence, it may be that the court in that case had in mind the principle which is now observed, that as the evidence develops, it becomes first the duty of one side and then the duty of the other side to go forward with the evidence, but be that as it may, the rule which now obtains is that the burden of proof does not shift and remains throughout the trial of the case on the plaintiff to establish negligence and on the defendant to establish contributory negligence. Aircraft Sales & Service v. Bramlett, 254 Ala. 588, 49 So.2d 144. See 11 A.L.R. page 690.

Upon a careful consideration of the evidence and certainly in the absence of a request for the affirmative charge by the plaintiff or the defendant, it is our view that the case on the issues of negligence and contributory negligence was a case for the jury.

**II.** There was no error in giving charges 2 and 5 requested by defendant. These charges are in keeping with the issues as made by the parties. Neither of these charges state the evidence which must be given by one party or the other. Charge 5 states the evidence which is necessary for a finding for the plaintiff and charge 2 the effect of a certain finding by the jury. It is well to keep in mind here that no charge was given or requested which deals with the presumption that obtains when the subject of the bailment is damaged while in the possession of the bailee. See Lewis v. Ebersole, 244 Ala. 200, 12 So.2d 543.

**III.** Photographs showing the scene of the accident were allowed in evidence by the court. They were shown to be true and correct representations of the place they purport to represent as it existed at the time pertinent to the inquiry, except that in two of the pictures grass is shown to be of considerable height on the tracks, while the evidence shows that the grass had been cut at the time of the accident. In ruling the photographs admissible the court allowed them in evidence except as to the grass on the track. One photograph showed the station and the tracks alongside the station. The "Hill Track" was to the rear of the station. We have examined the photographs and find no reversible error in allowing the photographs in evidence. City of Anniston v. Simmons, 31 Ala.App. 536, 20 So.2d 52, certiorari denied 246 Ala. 153, 20 So.2d 54.

**IV.** It is insisted that the court was in error in overruling the motion for a new trial. But the decision of the trial court refusing to grant a new trial on the ground that the verdict was contrary to the evidence will not be reversed unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust. City of Ozark v. Byrd, 225 Ala. 332, 143 So. 168; Cobb v. Malone, 92 Ala. 630, 9 So. 738. We are not so convinced. Not only did the jury have the right to conclude from the evidence that appellee was not guilty of negligence, but it could have found also from the evidence that the appellant was guilty of contributory negligence which proximately contributed to its loss.

Affirmed.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.