196 So.2d 392

**WESTERN RAILWAY OF ALABAMA**

**v.**

**Mellie A. BROWN.**

**5 Div. 793.**

Supreme Court of Alabama.

Feb. 23, 1967.

Walker & Hill, Opelika, for appellant.

Cunningham & Bounds, Mobile, for appellee.

COLEMAN, Justice.

Defendant appeals from a judgment for plaintiff in an action for personal injury allegedly suffered by plaintiff when she got off defendant's train on which she had been riding as a passenger.

Defendant argues in support of nineteen grounds for reversal.

### 1.

Defendant says the judgment should be be reversed because the court erred in refusing affirmative charges requested in writing by defendant. Defendant says it was entitled to such charges for three different reasons, first, because the proof failed to sustain the allegations of the complaint.

The complaint contained two counts. In Count One, plaintiff alleges that defendant was operating trains between Mobile and Opelika and was a common carrier of passengers for hire; that plaintiff bought a ticket at Mobile to be carried on defendant's train from Mobile to Opelika and became a passenger on defendant's train; that when the train reached Opelika, as plaintiff attempted to get off, she fell and suffered the injuries complained of. Count One concludes:

"Plaintiff alleges that all of her injuries and damages were caused as a direct and proximate result of the negligence of the defendant in negligently failing to provide the Plaintiff with a stool or box on which to alight from its said train when such was necessary by reason of the unreasonably high distance from said train to the ground."

Count Two is substantially the same as Count One except for the concluding paragraph of Count Two which is as follows:

"Plaintiff alleges that all of her injuries and damages were caused as a direct and proximate result of the negligence of the defendants (sic) in negligently failing to warn or give notice to the Plaintiff that there was no stool or box on which the Plaintiff could alight when such was necessary by reason of the unreasonably high distance from said train to the ground."

Defendant says that, by specifically averring the particulars which constituted defendant's negligence, plaintiff made the distance between the train and the ground a material issue in the case, that defendant was not negligent under either count unless the train was an unreasonably high distance from the ground, that plaintiff failed to adduce any evidence of the distance between the train and the ground, and, therefore, that plaintiff failed to prove a material averment of the complaint and defendant was entitled to the affirmative charge.

Defendant says plaintiff's evidence did not tend to establish anything more than the "distance from the *last step to the ground* or to a *concrete paved portion* (sic)," and that plaintiff did not offer any evidence of the height of "the train itself" off the ground. Defendant says that "evidence tending to establish the distance from the *last step* or the distance from some *undetermined place on the steps* to the *ground* or to the *concrete portion* (sic) furnishes no proof whatsoever of the height of the train from the ground." Defendant says further that the uncontradicted testimony of defendant's witness Williams shows that the distance of the train itself from the ground is only seven inches, which is the height of the rail and the tire plate.

It is elementary that the burden is upon the plaintiff to prove her complaint where the general issue is pleaded. Calvert Fire Insurance Co. v. Phillips, 41 Ala. App. 610, 145 So.2d 848; Central of Georgia Railway Co. v. Gross, 192 Ala. 354, 68 So. 291.

When a count contains several averments, all of which combined together make up the one cause of action averred, it is necessary to prove each of the averments in order to sustain the cause of action as laid. Birmingham Railway & Electric Co. v. Baylor, 101 Ala. 488, 13 So. 793; Mazer v. Brown, 259 Ala. 449, 66 So.2d 561.

Counts One and Two each state a single cause of action. The allegations are that plaintiff was a passenger on defendant's train and that she attempted to get off the train at her destination. These allegations show that defendant owed plaintiff a duty.

The duty of the carrier is to exercise due care in providing reasonably safe and convenient means for the assistance and protection of passengers in getting on and off its cars. Central of Georgia Ry. Co. v. Carlisle, 2 Ala.App. 514, 56 So. 737; Atlantic Coast Line R. Co. v. Farmer, 201 Ala. 603, 79 So. 35.

■ In the absence of circumstances rendering such assistance necessary, a carrier is not required to furnish a boarding or alighting passenger with a portable box or footstool, but, where the car step is unreasonably high, the carrier should furnish a box or footstool to facilitate the boarding or alighting of a passenger and should exercise due care to see that such box or stool is in a safe condition and is placed or used by its employees in a safe manner. Where the lowest car step is not higher above the ground than is usual for other vehicles from which people safely alight without such assistance, it has been held that a footstool need not be provided. *Farmer's* case, supra.

■ In the case at bar, plaintiff undertook to allege that her injuries were the proximate result of defendant's negligence in failing to provide a stool or box on which plaintiff could alight from the train. Plaintiff also undertook to state that defendant owed a duty to furnish a stool or box by alleging that a stool or box "was necessary by reason of the unreasonably high distance from said train to the ground." The allegation of "the unreasonably high distance from said train to the ground" is one of the bundle of allegations necessary to show that defendant owed plaintiff a duty to provide a footstool, and, if plaintiff failed to offer any evidence which will support a finding that there was such an unreasonably high distance from train to ground as to require a footstool, plaintiff failed to offer sufficient proof to sustain the cause of action as laid and the court erred in refusing the affirmative charges requested by defendant.

■ Plaintiff testified that the baggage man was helping her "down the steps, and I don't know, I just fell. I wasn't even thinking it was so far from the ground and the first thing I knew I just went down. It was 28 inches—" She testified further that there was no stool or box "between the last step and the ground." In answer to a question asking for her best judgment of the distance "from the last step on the railroad car to the ground or the concrete platform on the occasion of the accident," plaintiff said: "Well, it was a long ways. I know it must have been almost three feet." We think this evidence sufficient to support a finding that the distance from the last step on the car to the ground was so unreasonably high as to place on defendant the duty of providing a box or stool on which plaintiff could safely alight. Defendant argues, however, that proof of the distance from the last step on the car to the ground is not proof of the distance from "said train" to the ground.

■ We do not agree. Every person who has seen a railroad train, such as is commonly used to haul passengers, knows that the train travels on rails less than a foot high. It is also known that such a train travels on wheels which are a part of the train and that the wheels roll along on the rails. It is also known that passengers commonly disembark from trains on steps which are a part of the railroad car. All this we say to illustrate what we think is the meaning of the allegations that there was an unreasonably high distance from "train to the ground" taken in context with the prior allegation that as plaintiff "attempted to get off of said train at said place, she fell and suffered," etc. In our understanding, and, we think, in the common understanding of men, the allegation that a stool or box was necessary because "of the unreasonably high distance from said train to the ground" means that a stool or box was necessary because of the distance from train to ground at the point where plaintiff was getting off the train and not at the point where the top of the car was or at the point where the wheel touched the rail or at any other place on the train. Since the distance alleged means the distance at the point where plaintiff was getting off the train and the distance proved was also at the point where plaintiff was getting off the train, we hold that there was not a complete absence of proof to sustain the allegation that the distance from train to ground was unreasonably high.

## 2.

Defendant says it was entitled to the affirmative charge because there was a fatal variance between allegation and proof.

Defendant here reiterates that proof of distance from the last step to ground does not establish the distance from the train to the ground. We have already said, with respect to failure of proof, that we are of opinion that proof of distance from last step to ground would support the allegation of distance from train to ground. For the same reasons, we do not think there was a fatal variance as to proof of the allegation of distance from train to ground. The last step was a part of the train and the proof tends to show the distance from that part of the train to the ground. Moreover, the distance to the ground from the last step was the only distance at issue in the case.

Defendant says that, at best, plaintiff's testimony is that, in her judgment, "it" was "almost three feet" without specifying what the pronoun "it" referred to. This argument places excessive emphasis on a single word. One question to plaintiff recites:

"Q What in your best judgment was the distance from the last step on the railroad car to the ground or the concrete platform on the occasion of the accident?"

Defendant's objection was overruled and the next question was:

"Q Now, tell the Jury what your judgment was."

Plaintiff replied:

"A Well, it was a long ways. I know it must have been almost three feet."

Neither in ordinary conversation nor in testifying are many of us precise in our language when we attempt to answer a question which asks for our judgment of the distance between two points. Most of us answer somewhat as plaintiff did, that "it" was about a certain number of feet or inches or yards as we conceive the numerical measurement to be. We understand plaintiff's answer to be that, in her judgment, "it," the distance from last step to the ground, was almost three feet, and we are of opinion that there was no variance between allegation and proof so as to entitle defendant to the affirmative charge on the ground of such variance.

## 3.

Defendant contends that it was entitled to the affirmative charge because plaintiff's own testimony shows that she was guilty of contributory negligence as a matter of law.

Plaintiff's testimony is to effect that, when she started to get off, the baggage man caught her by the arm and was helping her down the steps; she had her overnight kit in her arm; she does not know, she just fell; she was not even thinking it was so far from the ground and the first thing she knew she just went down; it was 28 inches; it was just such a long distance and such a shock to her; the baggage man did not say anything to plaintiff; he was coming along kind of behind her; he had her by the left arm; she was holding to the rail going down; some people got off before her but she was not watching them; there was no one directly in front of her at all as she was walking down the steps; there was no one to obstruct her view as she went down; there was nothing to obstruct her view as she descended the steps; she was not looking at the steps as she went down; she was just walking along holding on; she realized it was high up; she did not look down because she was expecting another step there; it was so high; she was just walking along but it was so far to the ground; she never dreamed of it being that far; she did notice how far it was to the ground; she knew it was way up; she realized that she was way up from the ground; she could see the ground out there as she started down the steps; she realized it was a long ways down; she did not ask for a stool to be placed at the bottom of the steps; she did not realize that it was that far down; she did not notice the words, "watch your

step"; she did not slip off the step that she remembers; she was holding on to the handrail with her right hand but, in pretrial examination, she had said that she was not holding to the handrail; she just went to make the step and there was not any step there and she just came down; she does not know how she fell.

Defendant relies on rules which defendant states as follows. A carrier is not an insurer of a passenger and a passenger is required to exercise reasonable care for his own safety. Savell v. Southern Railway Company, 5 Cir., 93 F.2d 377, 114 A. L.R. 1261. The trial court will be reversed for failure to give the affirmative·charge requested by defendant when, under the undisputed evidence, plaintiff is guilty of contributory negligence. Louisville & N. Railroad Company v. Johns, 258 Ala. 440, 63 So.2d 574. In going through doors and in descending steps, a person is under a legal duty to look where he is stepping and, if he steps blindly without looking, he is guilty of contributory negligence as a matter of law. Hertz v. Advertiser Company, 201 Ala. 416, 78 So. 794, L.R.A. 1918F, 137.

Defendant says that the evidence shows, without dispute, that plaintiff was guilty of contributory negligence in not looking down as she descended the steps and that her failure to look and her act of stepping down without looking constitute negligence on plaintiff's part which proximately contributed to her injury and bars her recovery even if defendant was negligent in failing to provide a stool or in failing to warn plaintiff that a stool had not been provided.

If plaintiff had walked down the steps alone and unassisted by any employee of defendant, then there would be much force in defendant's argument. The testimony is, however, that plaintiff was assisted by the baggage man who had caught her by the arm and was helping her down the steps. We think the fact that an employee of defendant was assisting plaintiff makes a difference.

As a general rule, the law does not impose upon the carrier the duty of assisting passengers to alight from its cars. There is an exception to this rule where a person is accepted as a passenger, who is unable, through physical or mental disability to care for himself and this disability is known or made known to the carrier at the time of acceptance. It is also the duty of the carrier to assist a passenger in alighting if, obviously to its agents in charge, such passenger is then too sick or infirm or disabled to alight safely without aid. Central of Georgia Railway Co. v. Carlisle, 2 Ala.App. 514, 56 So. 737.

We think the jury could find that the act of the baggage man in taking hold of plaintiff's arm and helping her down the steps, was an implied assurance to plaintiff that the means provided were reasonably safe and convenient for plaintiff to use in alighting from the train, and that the jury could further find that plaintiff was not guilty of failure to use reasonable care for her own safety when she relied on the actions of the baggage man as assuring her that the facilities provided for her to alight from the train were reasonably safe for that purpose.

The situation is somewhat like the case where a person proceeds across a railroad crossing without stopping, looking, and listening and does so in reliance on a signal given by a flagman indicating that the way is clear. Under the decisions of this court, where a flagman stationed at a crossing invites a person to proceed across a railroad track, the person is under no duty to stop, look, and listen before obeying such invitation or signal to cross. Cunningham Hardware Co. v. Louisville & N. R. Co., 209 Ala. 327, 331, 96 So. 358; Alabama Great Southern R. Co. v. Anderson, 109 Ala. 299, 19 So. 516. So in the instant case, we are of opinion that the jury could find that plaintiff was not guilty of a breach of her duty to observe with reasonable care the situation at the steps if plaintiff proceeded down them in reliance on the

implied assurance of defendant's employee that the steps were reasonably safe.

In Hager v. Philadelphia & Reading R. Co., 261 Pa. 359, 104 A. 599, a lady passenger walked down the car steps and saw a brakeman assisting lady passengers from the car to the walk. Evidence for plaintiff was to effect that the brakeman took plaintiff's left hand, she released her hold on the handrail, and, when she was committed to the act of alighting, the brakeman, suddenly and without warning, jerked his hand away and caused plaintiff to fall. The court said that a railroad company is liable for the negligent act of employees while assisting passengers to or from its cars. Defendant contended that plaintiff was guilty of contributory negligence in relying implicitly upon the brakeman and not looking out for her own safety. The court said whether plaintiff's failure to look in advance, for the purpose of determining the distance from the car steps to the ground, contributed to the accident was for the jury, and, while she was required to exercise ordinary care, she was justified in relying upon the brakeman to assist her, for that was the duty he assumed to perform, and she was not bound to anticipate that he would be negligent.

■ We hold that the court did not err in submitting to the jury the question whether plaintiff was guilty of contributory negligence in the instant case.

## 4.

■ Defendant says that the court erred in overruling those grounds of the motion for new trial which take the point that the verdict is not sustained by the great preponderance of the evidence. Defendant says that, even if the court did not err in refusing the requests for affirmative charge, the court erred in overruling the motion for new trial because the great preponderance of the evidence did not support the verdict in the same three particulars which we have already considered, that is: the evidence was insufficient to sustain a

finding that the train was an unreasonably high distance from the ground, there was a fatal variance between allegation and proof that the train was such distance from the ground, and the verdict is against the overwhelming weight of the evidence on the plea of contributory negligence. We have already stated our reasons for holding the evidence sufficient, with respect to the three particulars mentioned, to justify refusal of the affirmative charge for defendant. We are also of opinion that the verdict is not contrary to the great preponderance of the evidence with respect to those three particulars and that the court did not err in overruling those grounds of the motion for new trial which assert a contrary opinion.

## 5.

Defendant contends that the court erred in overruling the ground of motion for new trial wherein defendant asserts that the verdict is excessive.

Defendant argues that the amount of the verdict, $14,213.00, for a strained and sprained ankle and knee is so grossly excessive as to shock the conscience of this court.

Plaintiff contends that she suffered injury in this wise. Prior to getting off defendant's train, plaintiff had varicose veins in both legs. The varicosity, however, was not severe, had never prevented her from performing her usual household duties, and had never required treatment. When plaintiff got off the train on May 6, 1960, she fell, and her right leg received a blow which aggravated the varicosity in her right leg and made it necessary for her to be hospitalized and undergo a radical varicose vein stripping operation in March, 1961.

As we understand the evidence, the vein stripping operation constituted the removal of a damaged vein running the full length of leg from ankle to groin, and plaintiff spent $1,007.01 for treatment and 17 days in hospital. Dr. Moore testified that plaintiff has a 25 per cent disability of her leg.

We have no difficulty in approving the amount of the verdict if the evidence supports a finding that plaintiff's operation and suffering were the proximate result of defendant's negligence in failing to provide a stool or in failing to warn that a stool had not been provided. We have already stated why we are of opinion that the jury could find that plaintiff fell as the proximate result of defendant's negligence. Defendant contends, however, that the evidence is insufficient to justify a finding that plaintiff, in alighting from the train, suffered an injury which caused aggravation of the varicosity in her right leg and made the operation necessary.

Defendant relies on rules stated as follows: Where an injury is of such character as to require skilled and professional men to determine the cause thereof, the question is one of science and must be proved by their testimony. Cohenour v. Smart, 205 Okl. 668, 240 P.2d 91. In such a case, the mere possibility that an injury could cause a condition is not sufficient to support the burden of proof resting on the plaintiff. The testimony must establish a probability, not a mere possibility, of such causal connection. Drakulich v. Industrial Commission, 137 Ohio St. 82, 27 N.E.2d 932. See annotation, 135 A.L.R. 516.

Assuming, without deciding, that the stated rules are correct and apply to the instant case, we will consider whether the medical witnesses testified merely that the plaintiff's alleged fall might have, could have, or possibly caused aggravation of plaintiff's varicose veins and consequent injury.

Defendant cites the testimony of four physicians. Dr. Palmer testified that, in his opinion, it would have been impossible for the accident to have any effect on plaintiff's varicose veins. He said, however, that he had practiced medicine for forty years in Opelika; and that he had never seen plaintiff but twice and that was a couple of years ago.

Dr. Walker could not conceive that the vein stripping operation was caused by plaintiff's detraining accident. He conceded that medical science is an uncertain field, that he differed many times with his colleagues on causes and relationship on certain injuries, and that it is not uncommon for doctors to disagree.

Dr. King, an orthopedic surgeon, treated plaintiff and sent her to Dr. Moore, a general surgeon. Dr. King thought plaintiff's varicose veins were there before the accident. He is not qualified to answer whether an injury, such as plaintiff's, has a tendency to aggravate varicose veins, that would come under Dr. Moore's testimony.

The testimony of the three doctors just mentioned would scarcely support a finding that plaintiff's fall caused the aggravation of her varicose veins. There remains, however, the testimony of Dr. Moore who performed plaintiff's vein stripping operation. He testified:

"Q Now, you prefaced your remarks with respect to the cause of this condition on the words it is conceivable and it is possible. Now, do you have an opinion to a reasonable medical certainty as to the cause of the diagnosis or the condition for which you treated her?

"A Yes, sir. If the patient's history is as stated I would think that the injury produced the aggravation of her varicose veins that required the surgical treatment."

Dr. Moore did not say "My opinion is," or "It is probable," that the injury caused the condition. He was asked, however, "do you have an opinion to a reasonable medical certainty" and he answered "Yes, sir," and proceeded to state what he thought. We are of opinion and hold that the quoted testimony is the expression of an opinion that plaintiff's condition was probably caused by her injury, if plaintiff's history as related to the witness be true.

Defendant argues further that the history on which Dr. Moore based his opinion is not supported by the testimony in that the history on which he relied was that plaintiff "received a direct blow to a portion of her leg from her ankle to her groin when she got off the train"; whereas there was no evidence at all of any blow to plaintiff's right leg.

Plaintiff testified: "I just stepped down and all my weight went on my right foot." Defendant's own witness, S. G. Jordan, who assisted plaintiff when she got off the train, positively and clearly testified that one of plaintiff's feet "slapped the ground," although he could not say whether it was her right or left foot.

On cross-examination, Dr. Moore testified that his opinion as to cause of plaintiff's condition would be different if she received no direct blow from ankle to groin and in that case he would think the varicose condition for which he treated plaintiff was not related to her injury. The next question and answer were as follows:

"Q All right, sir. You would not think that the mere fact that the lady stepped off the train with her foot hitting the ground would cause this condition for which you had to operate, would you?

"A It would depend on how far she had to go before her foot—of course, her trauma to her foot and ankle could be transmitted by falling on the outstretched leg and hitting on the foot if it were sufficient height. She could twist or sprain her knee or ankle without the necessity of striking the skin of the knee or the ankle."

We understand the doctor as saying that a blow sufficient to aggravate plaintiff's varicosity need not have been a blow between ankle and groin but that a blow resulting from the foot alone striking the ground could be transmitted so as to cause plaintiff's condition. On page 96 of the record, plaintiff testified " . . . . I just came down on my foot . . . . ."

We are of opinion that defendant's argument that the evidence fails to prove causal connection between injury and condition is without merit.

### 6.

Defendant argues that the court abused its discretion and erred in overruling defendant's objection to plaintiff's motion for leave to file amendment three to the complaint and in overruling defendant's motion to strike amendment three.

Defendant says and the record indicates that two previous amendments to the complaint had been allowed, and that amendment three was offered at the beginning of the afternoon session of the second day of the trial. The third amendment struck from the end of each count the following words:

"'and as a proximate cause thereof, the Plaintiff fell and received the injuries and damages set out above'"

We fail to see where the amendment made any material change in the complaint. The stricken words appear to be superfluous and the complaint makes better sense without the stricken words.

The allowance of any amendment to a complaint after the conclusion of argument is within the sound discretion of the trial court. The right of plaintiff to amend his complaint has been held to be liberally indulged. After conclusion of the evidence and argument, plaintiff shall have the right to amend his cause of action to conform to proof to the end that if his evidence shows a legal right, the court may give him legal redress. Taylor v. Riley, 272 Ala. 690, 695, 133 So.2d 869. Defendant's argument on this point is without merit.

### 7.

Defendant assigns for error the overruling of defendant's demurrer to the complaint as last amended.

In part 1 of this opinion we set out the allegations of each count wherein plaintiff undertakes to state that her injuries resulted from defendant's breach of a duty to provide plaintiff with a reasonably safe and convenient means for plaintiff to use in alighting from defendant's train. Defendant contends that neither count, when construed most strongly against the pleader, states a cause of action. Defendant says that, instead of averring negligence in general terms, plaintiff attempts to state the acts or omissions of defendant which constitute the breach of duty charged, and that the complaint is demurrable under the rule that, where a complaint avers negligence in general terms and then avers the particular act or acts constituting the alleged negligence without more, unless such act or acts in themselves amount to negligence, the complaint is demurrable. Johnson v. Birmingham Ry., L. & P. Co., 149 Ala. 529, 533, 43 So. 33; Thompson v. White, 274 Ala. 413, 417, 149 So.2d 797.

Defendant says that, in Count One, plaintiff does not allege the breach of any duty owed by defendant to plaintiff in that plaintiff alleged merely that she suffered injury as the proximate result of the "negligence of the defendant in negligently failing to provide the Plaintiff with a stool or box on which to alight from its said train when such was necessary by reason of the unreasonably high distance from said train to the ground," without alleging facts which show a duty on defendant to furnish a stool or box. Defendant says the facts alleged do not show that defendant owed a duty to furnish a stool or box because defendant owes that duty only when defendant has failed to provide some other reasonably safe and convenient means to alight from the train. Stated another way, defendant argues that the existence of some other alternative reasonably safe and convenient means of alighting was not negated and that, for aught that appears in the complaint, defendant furnished plaintiff some other safe and convenient means for alighting.

Defendant says further that in neither count does plaintiff aver that the distance from last step to ground was unreasonably high, and that plaintiff merely averred that distance from train to ground was unreasonably high. Defendant says also that the averment that distance from train to ground was unreasonably high is merely a conclusion of the pleader since plaintiff failed to allege that the distance was three feet or some other unreasonable distance.

We do not hold that the complaint is not defective on some or all of the grounds urged by defendant. Even if the court erred in overruling the demurrer, however, we must review the ruling in light of the rule that overruling a demurrer to a count is not always reversible error. The rule is that if there is some defect of averment in the complaint and the court has erred in holding such pleading good, nevertheless, if there is evidence of the matter so omitted and both parties try the issue as though such allegation were made, and the court instructs the jury that such matters must be proven, and both parties have full opportunity to offer and do offer all the evidence they wish on that issue, we will not reverse the judgment for the error in such ruling on the pleading. Turner v. Blanton, 277 Ala. 536, 540, 173 So.2d 80, and authorities there cited. The error in overruling the demurrer must be held as cured by the clear instructions requiring proof of the omitted allegation. Southern Ry. Co. v. Dickson, 211 Ala. 481, 485, 100 So. 665. There are circumstances, however, when the rule will not apply, as, for example, when the complaint does not state a cause of action without the matter which was omitted. Thompson-Hayward Chemical Co. v. Childress, 277 Ala. 285, 291, 169 So. 2d 305; City of Mobile v. McClure, 221 Ala. 51, 53, 127 So. 832.

In the case at bar, the evidence is undisputed that no stool or box was provided for plaintiff to use. There is no evidence or suggestion that any other place or way of egress was provided. We have already

discussed the evidence with respect to the assistance given to plaintiff by defendant's baggage man and the right of plaintiff to rely on his implied assurance that the way was safe. The distance from the lowest step to the ground was one of the contested issues and both sides offered considerable evidence in support of their respective contentions. The court charged the jury:

"THE COURT: You have your exception, Mr. Walker. The Court will state to the Jury a carrier must exercise care in providing reasonably safe and convenient means for the assistance and protection of passengers in getting on and off of the car. In the absence of circumstances rendering such assistance necessary a carrier is not required to furnish a boarding or an alighting passenger a portable box or foot stool, but where the car step is unreasonably high the carrier should furnish a box or foot stool to facilitate the boarding or the alighting of a passenger and should exercise due care to see that such box or stool is in a safe condition and is placed or used by its employees in a safe manner. . . ."

The quoted language is substantially identical with the first paragraph of the opinion in Atlantic Coast Line R. Co. v. Farmer, 201 Ala. 603, 79 So. 35. In assignment 35, defendant asserts that the quoted language is error. In assignment 34, defendant asserts that other similar language in the court's oral charge was error. Defendant's argument in support of assignments 34 and 35 seems to be that the charges are erroneous in the instant case because of the difference in the pleading in *Farmer* and in the instant case. We hold to the contrary.

We conclude that although the court may have erred in overruling the demurrer to Count One, the error was without injury under the rule set out in Turner v. Blanton, supra, and the *Childress* case, supra, unless the complaint does not state a cause of action.

We think Count One does state a cause of action. The principal defect relied on by defendant is that the averments fail to show that defendant owed a duty to provide a box or stool for plaintiff to use because plaintiff fails to negative the existence of other safe and convenient means of egress from the train. We are of opinion that the necessity for providing the box or stool is shown by the averment, "when such was necessary by reason of the unreasonably high distance from said train to the ground."

The last quoted averment is, as defendant contends, a conclusion, but it is the averment of an essential and ultimate fact. The averment is inartfully drawn, and we do not approve it as good pleading, but, in so far as stating the reason why a stool was necessary is to be considered, the averment is one on which issue can be taken and evidence can be offered just as well as can be done on the averment that defendant did not use due care to provide a passenger "a proper and sufficient place, light, means and facilities to enable plaintiff safely to alight," which was the averment in Roberts v. Kurn, 231 Ala. 384, 165 So. 77, and which defendant seems to suggest would have been the proper allegation in the instant case.

We hold that Count One states a cause of action and that overruling demurrer thereto was not reversible error.

Count Two charges breach of a duty to warn of the absence of a stool rather than breach of the duty to provide a stool. Defendant argues that the facts alleged do not show a duty on defendant to warn that no stool had been furnished. Where the car step is unreasonably high, the carrier should furnish a box or footstool to facilitate the alighting of a passenger. *Farmer's* case, supra. If defendant had breached that duty, which we have already said we think is sufficiently averred, although defectively, then defendant's duty to exercise reasonable care to provide a safe exit from the

train would certainly require defendant to warn plaintiff of the unsafe condition resulting from defendant's failure to provide a footstool. We hold that Count Two states a cause of action and that overruling demurrer thereto was not reversible error.

■ Moreover, since Count One states a cause of action and all testimony competent under Count Two might have been introduced under Count One, and since it was incumbent on plaintiff to make the same proof and degree of proof under Count Two as plaintiff was required to make under Count One, and, likewise, the same defense was open to defendant under both counts, therefore this court will not reverse for overruling demurrer to Count Two, even if the count be defective, because it would be error without injury. Alabama Power Company v. Lewis, 224 Ala. 594, 596, 141 So. 229; Milford v. Tidwell, 276 Ala. 110, 114, 159 So.2d 621.

### 8.

Defendant assigns for error the admission of plaintiff's Exhibit 1 into evidence over defendant's objection.

Exhibit 1 is a photograph of the steps of what appears to be a railroad passenger car. The photograph was made on the day of the trial. Plaintiff testified that the picture was taken at the train station at Opelika and that the car in the picture "looks just like the same" passenger car from which she alighted at the time of her alleged injury and "It was about the same place on the landing" where she got off the train.

After Exhibit 1 had been admitted into evidence, defendant's witness, Jordan, who had assisted plaintiff off of the train, testified that the car shown in Exhibit 1 is not the same type car plaintiff stepped off of and is not at the place where plaintiff got off the car. There was thus a conflict in the evidence as to whether the car was the same or the place the same, but we do not think this conflict made Exhibit 1 inadmissible.

Defendant says that no witness ever testified that the conditions shown in Exhibit 1 were substantially the same as the conditions where plaintiff detrained on the day of her alleged injury, and, therefore, Exhibit 1 was not admissible.

We have set out plaintiff's testimony to effect that car and place were the same. It seems that two types of passenger cars were used by defendant. Defendant's witnesses said the car pictured in Exhibit 1 was not the type plaintiff got off of, but Jordan testified: "I wouldn't say there would be a variation of two inches or more" in the height of the steps on the two types of cars. Defendant's witness, Meadows, testified that the "last step on each" type of car is "Supposed to be the same distance" from the ground. Defendant's witnesses showed that the car pictured in Exhibit 1, as to the principal fact here in question; to wit, the height of the steps; is substantially the same as the car which plaintiff got off of. At least, we so understand the testimony. Plaintiff testified that Exhibit 1 showed "about the same place" where she got off.

■ We are of opinion that the extrinsic evidence was sufficient to show that Exhibit 1 was a substantially true and correct representation of the scene of the accident and was admitted without error. Atlantic Coast Line R. Co. v. J. B. Maynard Const. Co., 259 Ala. 623, 67 So.2d 893; Wilson v. State, 256 Ala. 12, 53 So.2d 559.

### 9.

Defendant says the court erred in sustaining objection to the following question propounded to plaintiff on cross-examination:

"Q And what is it that now makes you remember that your over-night kit was in your left arm."

On pretrial examination, plaintiff had testified that she had her overnight kit in her right arm as she got off the train. On the trial, she said she had the kit in her left arm.

On cross-examination, a witness may be asked as to his reasons for certain acts of his and his motives and intentions in respect to his conduct. Armour & Co. v. Cartledge, 234 Ala. 644, 649, 176 So. 334.

We think the court erred in sustaining plaintiff's objection.

Defendant also assigns as error the court's action in overruling defendant's objection to questions subsequently propounded to plaintiff on redirect examination asking: when plaintiff recalled having the overnight bag in her left hand. We think this was also error. Ordinarily, one cannot prove by a witness on direct examination what were his motive, purpose, fear, or other mental operations. Armour & Co. v. Cartledge, supra.

After examination of the entire cause, however, we are not of opinion that these errors probably injuriously affected substantial rights of defendant and, for that reason, do not reverse the judgment for these errors. Supreme Court Rule 45.

### 10–14, 16, 19.

Assignments 15 through 23, 27, and 36 have been separately considered by the court in consultation. We are of opinion that reversible error is not shown and that we would not be justified in lengthening this opinion to include a discussion of these assignments.

### 15.

In assignments 26 and 24, defendant says the court erred in permitting the depositions of Dr. King and Dr. Moore to be taken out by the jury when it retired, after the depositions had been read into evidence in the presence and hearing of the jury.

In support of this assignment defendant cites Skinner v. Neubauer, 246 Minn. 291, 74 N.W.2d 656, 57 A.L.R.2d 1005, where, in § 2, the annotator states that in the absence of any applicable statute, the courts are in considerable disagreement as to whether any error inheres in the taking of depositions to the jury room. In § 6, Alabama is classified among states taking the view that the taking to the jury room of depositions whose contents have either been read, or are admissible, in evidence is a matter which the trial court, in the exercise of a sound discretion, may permit, citing, K. B. Koosa & Co. v. Warten, 158 Ala. 496, 48 So. 544; Alabama City, G. & A. R. Co. v. Heald, 178 Ala. 636, 59 So. 461; Davis v. Brandon, 200 Ala. 160, 75 So. 908; Lurie v. Kegan-Grace Co., 209 Ala. 339, 96 So. 344. Whether a deposition or written showing for an absent witness, unaffected with inadmissible matter, should be taken out by the jury is subject to the discretion of the trial court. Lurie v. Kegan-Grace Co., supra. We find no abuse of discretion here.

### 17.

When plaintiff rested, defendant moved to exclude plaintiff's evidence on the ground that the evidence does not support the allegations of the complaint. The court overruled the motion and defendant assigns the ruling for error.

The assignment is without merit. In civil cases, the court will not be put in error for refusing defendant's motion to exclude all plaintiff's evidence; Mobile Cab & Baggage Co. v. Busby, 277 Ala. 292, 297, 169 So.2d 314; Atlantic Coast Line R. Co. v. French, 261 Ala. 306, 309, 74 So.2d 266; Riley v. Riley, 257 Ala. 636, 638, 60 So.2d 432; Oliver's Garage v. Lowe, 212 Ala. 602, 103 So. 586; McCray v. Sharpe, 188 Ala. 375, 66 So. 441. See concurring opinion of Mayfield, J., in Scales v. Central Iron & Coal Co., 173 Ala. 639, 646, 55 So. 821. A denial of such a motion is not in any case reversible

error; McMullen v. Daniel, 229 Ala. 194, 197, 155 So. 687. The motion to exclude the evidence because insufficient to prove plaintiff's case is inappropriate in a civil case as this court has held many times. The affirmative charge is the proper method. Mazer v. Brown, 259 Ala. 449, 454, 66 So.2d 561.

18.

Assignments 34 and 35 have been disposed of in section 7 of this opinion.

This cause has been vigorously contested in the trial court and in this court. After extended consideration, we are of opinion that defendant has not shown reversible error and that the judgment is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and GOODWYN, JJ., concur.